## GULF OIL CORPORATION v. SMITH et al.

### No. 8922.

Court of Civil Appeals of Texas. Austin.

Oct. 23, 1940.

Rehearing Denied Nov. 27, 1940.

Joe S. Brown, of Houston, and Stanley Hornsby, of Austin (John E. Green, Jr., of Houston, of counsel), for appellant.

Gerald C. Mann, Atty. Gen., and E. R. Simmons, Asst. Atty. Gen., for appellee Railroad Commission.

Ramey, Calhoun & Marsh, of Tyler, and Wheeler & Wheeler, of Austin, for appellee James T. Smith.

BAUGH, Justice.

This is a Rule 37 case. The permit involved, dated November 23, 1937, was for a fifth well on a 3.45-acre lease owned by Smith in the fairway of the East Texas field. It was applied for, as an exception to Rule 37, to prevent confiscation of Smith's property, and granted on that ground. The Gulf, owner of an adjoining leasehold, sued to set it aside. Trial was to a jury, but at the close of plaintiff's evidence, upon motion made, the court withdrew the case from the jury and rendered judgment for defendants upholding the permit; hence this appeal.

The first question presented is whether the trial court erred in sustaining defendant's special exceptions to the plaintiff's pleadings, alleging facts which, appellant contends, showed conclusively that the well involved was not necessary to prevent confiscation, and that the permit was consequently invalid.

A brief statement of basic factual background will contribute to a better understanding of the issues presented. Originally James T. Smith and W. L. Allen were owners of leaseholds on two adjoining tracts consisting of 3.11 acres each. Each tract was a rectangle approximately 300 feet wide east-west, and approximately 460 feet long north-south. Smith owned the leasehold on the eastern tract and Allen that on the west.

Well No. 1 on each of said tracts was drilled near the center thereof. Two other wells were thereafter drilled on each of said 3.11-acre tracts, both located on the north one-half of these respective tracts. Thereupon Smith purchased from Allen the leasehold on .34 of an acre out of the N. E. corner of the Allen tract, adjoining

his tract, which included one of the Allen wells. The result of this was that Smith then owned a 3.45-acre tract with four wells thereon; and Allen had remaining a 2.77-acre tract with two wells thereon. ·All of this occurred prior to October 1, 1937.

On the latter date the Railroad Commission granted to Allen a permit for a third well on his remaining 2.77-acre tract, located southeast of his No. 1 well, and 60 feet from the common boundary between the Smith and Allen tracts. This well is referred to as the Allen No. 3. Thereupon Smith applied for and was granted, to prevent confiscation, an equidistant offset to Allen No. 3, on his own tract. This was the only reason presented by Smith to the Commission for granting the permit here under attack. This well is referred to as Smith No. 5, being the fifth well on his 3.45 acres, which permit was granted, over the protest of the adjoining owners, on November 23, 1937. At that time no suit had been filed to set aside the October 1st Allen permit for his well No. 3.

Subsequent thereto, and before Smith began drilling his well No. 5, suits were filed to set aside both of said permits, and Smith was so informed. The trial court, after full hearing, set aside as invalid the Allen permit for his well No. 3, and the judgment was affirmed by this court. See Allen v. Gulf Oil Corp., 139 S.W.2d 207.

By amended pleadings in the instant case, the above stated facts were substantially pleaded by the Gulf as conclusively showing the invalidity of Smith's permit No. 5 here involved; but these pleadings were stricken out upon special exception thereto by appellees. In this the trial court was clearly in error.

The exceptions lodged against such pleadings, and sustained by the trial court, were that when the Smith permit of November 23, 1937, was granted no suit had then been filed to set aside the Allen permit of October 1, 1937; and that so far as the Railroad Commission was concerned or then knew, the Allen No. 3 permit was valid and the Commission so treated it. Consequently that when so treated as valid, the Smith No. 5 offset well was necessary and its validity must be determined by the facts and conditions presented to the Commission at the time the Smith permit was granted on November 23, 1937.

The general rule is now well settled that the validity of a permit is referable to the conditions as they existed at the time the Commission acted. But this rule cannot give validity to a permit which in law and in fact is invalid. The mere granting of a permit does not in and of itself make such permit valid. It has in its support every presumption of validity unless and until it is set aside in the manner prescribed by law. Nor does it have vitality from the date it is issued up to the date of a final judgment setting it aside. Its invalidity, no matter when finally determined, relates to the date of its issuance and no acts performed under it are valid. It is void from the beginning; and manifestly can furnish no legal basis for sustaining a subsequent act or order of the Commission, the validity of which latter must depend upon and be supported by the former.

The question here presented is practically identical with that involved in General American Oil Co. v. Gulf Oil Corp., Tex.Civ.App., 139 S.W.2d 314, writ refused, wherein an offset well to prevent confiscation was sought to be sustained where the permit for the well first granted was subsequently held to be invalid. That case clearly controls the instant case. The only difference is that in that case, suit to set aside the first permit had already been filed when the second permit was granted. In the instant case it had not. But no estoppel against the Gulf is or can be urged in the instant case for the reason that suit was· promptly filed by it to set aside the Smith permit after it was granted, as well as the Allen permit, and both suits were pending and known to Smith when he began to drill his well No. 5, in February, 1938.

Appellant next contends that the trial court erred in excluding as evidence the memorandum to the Commission made by the examiner who heard Smith's application and the protests thereto. Where the attack on a permit is made on the ground that there was no evidence before the Commission to sustain it, we held expressly in Empire Gas & Fuel Co. v. Railroad Commission, 94 S.W.2d 1240, 1244, writ refused, that the examiner's recommendation to the Commission was admissible. Its exclusion in the instant case, however, appears to have been harmless in that all the facts stated in the recom-

mendation were shown by the record otherwise.

Coming now to the proof, we think it conclusively and as a matter of law shows that no confiscation of Smith's property would occur without the well here involved; and that the permit cannot be sustained on that ground, the only ground upon which it was granted. And this is true whether the Allen No. 3 well be taken into consideration or not. Clearly it should not be, and without it Smith, with five wells on his 3.45 acres, would be given a distinct drainage and production advantage over his neighbors.

On the issue of confiscation the test is whether the owner with the wells he already had, "has been given a fair and equal opportunity with other producers on surrounding tracts within the drainage area to recover his fair share of the oil in place beneath his tract. If he has, no confiscation results." Ward Oil Corp. v. Overton Ref. Co., Tex.Civ.App., 139 S.W. 2d 292, 293, writ refused. The uncontroverted proof in the instant case shows that the well potentials and daily allowables for wells in this area were substantially the same; that Smith's density with four wells was greater than that of any of the surrounding tracts, and greater than the eight times surrounding area whether delineated by a square, rectangle, or circle; that his recovery of oil per day per acre under the allowables was greater than that of any of the surrounding tracts, and much greater than that of the surrounding drainage area; and that the well here involved would materially increase this disparity.

The only ground urged in this regard as sustaining said permit for well No. 5 is that without it, a portion of the southwest corner of Smith's tract would be drained by wells on adjoining tracts. The undisputed testimony shows, however, that this drainage from Smith's tract was more than compensated by drainage to it from other surrounding tracts through the wells he already had. Consequently he suffered no net loss of oil through drainage. The evidence further showed that his well had been producing over a period of years and that he had already extracted approximately ⅔ of the estimated amount of oil originally in place beneath his tract, being a larger proportion than had been extracted by owners of adjoining tracts. Under these facts and circumstances confiscation was negatived as a matter of law.

While we have heretofore, where judgment was rendered against plaintiff at the close of his evidence, and none offered by the defendant, usually reversed and remanded the judgment of the trial court for another trial, it appears in the instant case that in view of the undisputed record facts excluded by the trial court, but which he should have considered, no confiscation was or could have been shown. Consequently said permit was invalid as a matter of law under indisputable facts, and no purpose would be served by reversing and remanding said cause for another trial. In brief, no evidence which appellees could produce would alter the result, in the face of the uncontroverted facts shown by the record before us.

The permit attacked is therefore set aside as invalid; and the cause reversed and remanded to the trial court for such ancillary relief as may be appropriate under the circumstances.

Reversed and remanded for appropriate ancillary relief.