RAILROAD COMMISSION OF TEXAS ET AL V. SHELL
OIL COMPANY, INCORPORATED, ET AL.

No. 7928.  Decided March 11, 1942.
Rehearing overruled May 6, 1942.
(161 S. W., 2d Series, 1022.)

*Gerald C. Mann,* Attorney General, *Edgar W. Cale, James Noel, Tom D. Rowell, Jr., James D. Smullen* and *Fagan Dickson,* Assistants Attorney General, for plaintiff in error, Railroad Commission, and *Wheeler & Wheeler,* all of Austin, for plaintiff in error Trem Carr.

The court erred in holding that proof that the drilling of the wells permitted by the order of the Railroad Commission under attack would create the uniformity of spacing, is not a sufficient basis for sustaining said order on the ground of the prevention of waste. Alpha Pet. Co. v. Terrell, 152 S. W. 257; Railroad Commission v. Magnolia Pet. Co., 109 S. W. (2d) 967; Humble Oil & Ref. Co. v. Turnbow, 133 S. W. (2d) 191.

It was error for the court to enter a judgment cancelling the permit, because said permit was granted under the recited ground that same was necessary "to prevent physical waste"

and there was substantial evidence to sustain such finding. Buckley v. Atl. Refining Co., 146 S. W. (2d) 1082; Dailey v. Commission, 133 S. W. (2d) 219.

*R. H. Whilden* and *Rex Baker,* both of Houston, and *Powell, Rauhut, & Gideon, Dan Moody* and *J. B. Robertson,* all of Austin, for defendants in error.

The court did not err in holding that the permit could not be sustained as necessary to prevent waste on the basis of the testimony at the Railroad Commission hearing and on the trial that wells spaced 120 feet apart all over the east Texas field will increase the ultimate production therefrom. Stanolind Oil & Gas Co. v. Midas Oil Co., 123 S. W. (2d) 911; Brown v. Humble Oil Co., 83 S. W. (2d) 935; Arkansas Fuel & Oil Co. v. Reprimp Oil Co., 91 S. W. (2d) 381.

*John W. Stayton,* of Austin, *W. Dewey Lawrence, Oran Lowry, Earl B. Mayfield* and *W. Edward Lee,* all of Tyler, *Robert E. Hardwicke, Robert E. Hardwicke, Jr., Mark McGee* and *Ira Butler,* all of Fort Worth, *Saye & Saye,* of Longview, and *J. W. Hassell,* of Dallas, filed briefs as amici curiae.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is a Rule 37 case. The Legislature of this State by the enactment of Revised Statutes, Article 6049c, conferred on the Railroad Commission of Texas the authority to regulate the oil industry for the purpose of preventing waste. Pursuant to the authority so vested in it the Railroad Commission of Texas adopted Rule 37, applicable to the East Texas oil field. For a copy of the rule, see Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 65, 131 S. W. (2d) 73, 77. The pertinent part of said rule is as follows:

"Rule I. *Spacing Rule.* No well for oil or gas shall hereafter be drilled in said East Texas field nearer than 660 feet to any other completed or drilling well on the same or adjacent tract or farm; and no well shall be drilled in said field nearer than 330 feet to any property line, lease line, or subdivision line; provided that the Commission in order to prevent waste, or to prevent the confiscation of property will grant exceptions to permit drilling within shorter distances than above prescribed whenever the Commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property."

Trem Carr made application to the Railroad Commission of Texas for a permit to drill a well, being a second well on a .92-acre tract, being on a .67-acre subdivision thereof, which .92-acre tract was in turn a voluntary subdivision from a 20-acre tract. For a more detailed description of the tracts of land involved, see Richey v. Shell Petroleum Corp., 128 S. W. (2d) 898. The well in question was located approximately 120 feet from an adjoining well and within less than 660 feet of several other wells. The right to drill and operate the well was contested by the Shell Oil Company and other adjoining property owners. The permit was granted by the Railroad Commission of Texas, but on a trial in the District Court of Travis County it was cancelled. The judgment of the trial court was affirmed by the Court of Civil Appeals. 154 S. W. (2d) 507. Applications for writs of error by both the permitee and the Railroad Commisison were granted by this Court.

It should be noted at the outset that the permitee makes no contention for a right to drill and operate the well in question on the ground that the same is necessary in order to prevent confiscation of his property. That question has heretofore been tried out, and the right to a permit on that ground denied. See Richey v. Shell Petroleum Corp., 128 S. W. (2d) 898. The sole contention here is that the drilling and operation of the well is necessary in order to prevent physical waste.

The testimony introduced by the permitee in support of his application for the permit consisted largely of the testimony of expert witnesses. One of these witnesses testified: "It is my opinion that the more wells are drilled the greater will be the recovery of oil from the field provided the rate of flow is properly restricted throughout the life of the field." Another witness testified that under the whole area in this section of the oil field water is tending to come up irregularly or unevenly; that at the time of the hearing it had not reached such a stage that oil was being trapped thereby, but that in his opinion eventually, twenty or twenty-five years later, when the then-existing wells are finally drowned out the water will come up around the present wells, causing some oil to be trapped in small areas between the present wells. Other witnesses testified that some oil under the .67-acre tract would ultimately be trapped and lost unless the drilling of this well was permitted. All of the testimony showed, however, without any substantial dispute that the same conditions as above set out would be true of any other similar area in the oil field if not drilled to an equal density. The testi-

mony further showed that in this, and the eight times area surrounding the 20.92 acres from which this small tract was segregated, the underground conditions—that is, sand thickness, porosity, permeability, potentials, etc.—were substantially uniform. Another expert witness testified on behalf of the permitee that in his opinion the drilling of the well in question "will add to the total production both of the entire field and of the area and of the tract. It (my opinion) is based primarily upon two premises. One is that the sand on the top forty feet of the Woodbine in that area is exceedingly tight and consequently the effective drainage area of a well in that tight sand is much less than it is normally throughout the field. The second is that it has been my observation on the wells that have already been plugged and abandoned in the East Texas field that very few, if any, of them drained all of the recoverable oil in a ten-acre area, and in most cases the drainage area can be restricted down to where it was less than two acres." This same witness, however, admitted that the same would be true with reference to any other section of the East Texas oil field where the wells were drilled more than 120 feet apart.

It will be noted that Rule 37, copied above, as adopted by the Railroad Commission provides generally for the spacing of wells 660 feet apart, but provides that the Commission may grant exceptions to permit drilling within shorter distances whenever the Commission shall determine that such exceptions are necessary to prevent waste. The Commission has never fixed any standard or rule by which it would be guided in determining under what circumstances an applicant would be entitled to such a permit, except that it will grant the permit "whenever the Commission shall determine that such exceptions are necessary to prevent waste." The briefs do not make it exactly clear under what circumstances the Commission proposes to grant such exceptions, but apparently its position is that since the statute has conferred upon it the authority to regulate the oil industry for the prevention of waste, and has therefore authorized it to determine the density of the wells in the field, it has the right, from time to time, as the facts develop, to change its opinion as to the needed density of the field; that upon hearing proof that "the more wells the more oil will be produced," it may conclude that a closer spacing of wells is needed, and in order to accomplish this purpose it may grant special permits to such individual applicants as it desires for the drilling of wells at less than 660 feet apart; and that at other times upon the hearing of substantially the same proof

it may reach the conclusion that the field, for the time being, has reached the saturation point, and that no more wells are needed, and it may therefore refuse other applicants the special permits requested by them. In other words, its contention, as shown by the briefs filed by the Attorney General, is that it has the discretion of determining the density of wells that should prevail in the field, and that it can bring about and control such density by the granting or withholding of special permits as it deems proper.

The Railroad Commission takes the position that any permit to drill a well as an exception to the spacing provisions of Rule 37 is sustainable on the ground of preventing waste if there is testimony of expert witnesses to the effect that the more wells are drilled, the more oil will ultimately be recovered from the field. It is admitted that this theory, if correct, would apply equally to all parts of the field. Reduced to its last analysis, it appears to be the contention of the Railroad Commission that in the exercise of its authority to regulate the oil industry it has the power to grant or refuse a special permit in its discretion.

■ This contention is unsound because it is based on a construction of the rule that would render it unconstitutional and void. It would grant to the Railroad Commission arbitrary power to discriminate between individuals without any standard or guide to govern it in the exercise of its discretion. Rule 37, like all other general orders of the Railroad Commission, is subject to the same principles of construction as are generally applied in construing statutes. It is a well-established principle of constitutional law that any statute or ordinance regulating the conduct of a lawful business or industry and authorizing the granting or withholding of licenses or permits as the designated official arbitrarily choose, without setting forth any guide or standard to govern such officials in distinguishing between individuals entitled to such permits or licenses and those not so entitled, is unconstitutional and void. 11 Amer. Jur. 947. See also annotations, 12 A. L. R. 1436, 54 A. L. R. 1104, 92 A. L. R. 400. In the case of Spann v. City of Dallas, 111 Texas 350, 235 S. W. 513, 19 A. L. R. 1387, this court had under consideration the validity of a city ordinance which required a permit to construct a business house in a residential district, and left it to the discretion of the inspector as to whether or not such permit should be granted. In condemning the ordinance, Chief Justice Phillips said:

"A further vice in the ordinance is that even with the necessary consent of the property owners of the district, a business house may not be erected within it except upon the building inspector's approval of the design of the building. No rule or standard is given to govern the applicant in fashioning the design of his building or to govern the inspector in approving or rejecting it. The ordinance leaves it to the unbridled discretion of the inspector to disapprove the design, resulting in a refusal of the permit and the prohibition of the building. This leaves the right to construct the building subject to the arbirary discretion of the inspector, and of itself renders the ordinance void. The very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another. Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220." See also City of Dallas v. Urbish, 252 S. W. 258, 259, par. 2.

In the case of Ex parte Leslie, 87 Texas Crim. Rep. 476, 223 S. W. 227, the Court of Criminal Appeals had under consideration the validity of a proclamation of the Live Stock Commission which required the stock owners to dip their cattle at regular intervals, but further provided "that owners or caretakers may be excused from dipping their cattle, * * * when it is deemed safe or expedient to do so." The Court of Criminal Appeals condemned the statute because it provided no condition under which a citizen could determine whether or not he had a right to be exempted from the law, and left it to the unbridled discretion of the inspector to say whether or not he should dip his cattle.

In the case of Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, the Supreme Court of the United States had under consideration a city ordinance which required anyone desiring to operate a laundry to secure a permit therefor. The evidence disclosed that the authorities charged with enforcing the ordinance were refusing permits to Chinese and granting permits to all other applicants. The court said:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

In the case of Jones v. Securities & Exchange Commission, 298 U. S. 1, 56 Sup. Ct. 654, 80 L. Ed. 1015, Mr. Justice Sutherland, speaking for the Supreme Court of the United States, said:

"Arbitrary power and the rule of the Constitution cannot both exist. They are antagonistic and incompatible forces; and one or the other must of necessity perish whenever they are brought into conflict. To borrow the words of Mr. Justice Day—'there is no place in our constitutional system for the exercise of arbirary power'." See also Garfield v. United States, 211 U. S. 249, 262, 29 Sup. Ct. 62, 53 L. Ed. 168; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. This Court in the case of Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. (2d) 73, par. 40, speaking through Mr. Justice Critz, said:

"In administering our oil and gas conservation statutes, the Commission must be fair, and must not indulge in unreasonable discrimination between different oil fields, or between different tracts of land in the same field." The same holding was made by this Court in Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. (2d) 935, 87 S. W. (2d) 1069, 101 A. L. R. 1393.

Rule 37 must be given a construction that will, if possible, sustain its validity, and that can only be done by laying down some standard to guide the Commission in the exercise of its discretion. An inspection of the rule reveals that it purports to set up such a standard, viz., the necessity of preventing confiscation or waste. Ostensibly, then, the necessity of preventing waste is one of the criterions to distinguish a particular tract of land from those subject to the general spacing rule. If, however, an exception to prevent waste may be granted on the basis of testimony that is equally applicable to any other field or part of a field subject to the rule—as in the case where the "more wells, more oil" theory is relied upon—then there is actually no basis in fact for a distinction between cases subject to the general provisions of the rule and cases within the exceptions therein, and the Commission has no real guide or standard at all. Such a construction of the rule would be equivalent to allowing the Commission unlimited and arbitrary discretion to grant or refuse a permit whenever it should see fit, and the rule would be void under the authorities above discussed. In order to be valid a discrimination between persons must have a reasonable basis in fact. There must be some fac-

tual basis for classifying some applicants as subject to the general spacing provisions of the rule and other applicants as within the exception. This reasonable basis can only be a showing of unusual conditions peculiar to the area where the well is sought to be drilled—not testimony that would be equally applicable to any other part of the field. Therefore, in order to sustain the validity of the rule we must give it the construction that the exception is to be granted only upon a showing of unusual conditions.

If the Commission intended that all should be granted special permits upon request therefor, the general spacing provided for in Rule 37 was useless and should not have been adopted. If it intended to deny permits to all who applied therefor, the exceptions provided for in Rule 37 were surplusage. If it intended to grant permits to some and refuse them to others under like circumstances, the rule gives the Commission the power of arbitrary discrimination, and is void. If it was the intention of the Commission to grant permits only upon a showing of exceptional underground conditions, then this permit was properly cancelled, because of the lack of any evidence showing any exceptional circumstances.

Under the statutes which confer upon the Railroad Commission the authority to regulate the oil industry to prevent waste, the Commission undoubtedly has authority to make some reasonable rule for the spacing of wells. It did not exhaust its authority by adopting the general provisions of Rule 37 providing for the spacing of wells on the 330-660 ft. basis. It can lawfully change that rule if the facts warrant it, or it may allow the rule to stand as a general rule and make exceptions where the facts require it. However, as above stated, before the Commission would be authorized to provide one rule for oil operators generally and another to apply in exceptional cases, there would have to be some factual basis for making the distinction, and all coming within the exceptional fact situation would have to be given equal privileges thereunder. Upon a showing that in a particular field, or in a particular section of a field, on account of the peculiar formation of the underground structure or other unusual circumstances, a closer spacing of the wells is essential to recover the oil, undoubtedly the Commission would have authority to grant the exception, provided that it includes all those and only those coming within the exceptional situation, and providing further that it did not unduly discriminate in any other manner against producers in

other areas or fields. Gulf Land Co. v. Atlantic Refining Co., supra. The Commission would not have to be absolutely accurate in its determination of what land should be included in or excluded from the exception, provided the order has a reasonable basis in fact and a pattern is furnished by which the operators can determine their rights. This Court has heretofore made it clear that a reasonable margin for error must be allowed. Gulf Land case, supra, par. 40; Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. (2d) 935, 87 S. W. (2d) 1069, 99 A. L. R. 1107, 101 A. L. R. 1393.

Since there was no evidence showing any exceptional circumstances in this instance, the trial court and the Court of Civil Appeals correctly held that the permit had been improperly granted by the Railroad Commission.

■ The Attorney General contends that since none of those now contesting the granting of the permit in question have applied for and been refused a like special permit, we have no ground to assume that such a permit would be refused if requested, and, consequently, there is no evidence of discrimination against them and they are not in a position to complain. However, in our opinion, the adoption and retention of the general provisions of Rule 37 requiring all operators in the East Texas oil field to space their wells at least 660 feet apart is in itself a denial of closer spacing to every operator in the field. In addition, the Act here in question specifically provides that any interested party may contest the granting of such a permit. It has frequently been held that adjoining landowners such as the present protestants are interested within the meaning of the statute. Humble Oil & Refining Co. v. Railroad Commission, 112 S. W. (2d) 222, par. 7; Empire Gas & Fuel Co. v. Railroad Commission, 94 S. W. (2d) 1240, par. 12 (writ refused; Murphy v. Truman Oil Co., 97 S. W. (2d) 485, par. 2.

■ Nor can it be maintained that such a restriction of the Commission's powers is an unwarranted invasion by the courts of the field of action properly belonging to the Commission in the administration of the conservation laws. The action of a court in cancelling such a permit is merely restraining the Commission from exceeding its authority. The courts must preserve the equal protection of the laws, even when those laws are administered by administrative boards. And in curbing such an exercise of excessive power the courts are but performing the functions prescribed for them by the Constitution and laws

of this State. Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. (2d) 935, 943, 87 S. W. 1069, 99 A. L. R. 1107, 101 A. L. R. 1393; Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648, 70 L. R. A. 850.

■ The Attorney General raises another question which we deem necessary to discuss at this time. He contends that in contesting an action of an administrative agency, such as the Railroad Commission, the testimony should be taken by the administrative agency and the findings of fact made by it, and that the courts should accept such findings without any independent hearing of the evidence anew, and that such findings so made by the administrative agency should be binding upon the court if there is any substantial evidence in the record to support same. We had thought that this question had heretofore been definitely settled by the decision of this Court contrary to the contention of the Attorney General. Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106, par. 9; Railroad Commission of Texas v. Magnolia Petroleum Co., 130 Texas 484, 109 S. W. (2d) 967, par. 3. Nothing that was said in Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 135 S. W. (2d) 73, was intended to overrule the holding theretofore made on this question. However, in view of the insistence of the Attorney General, we have concluded to further discuss the question.

The doctrine that the administrative agency should take the testimony and make the findings of fact, and that the findings should be binding upon the court, is foreign to the law of this State. We have found no Texas decision involving review of the orders of an administrative body which so restricts the court in its taking of testimony. Such doctrine seems to have had its origin in the statutory enactments by the Congress of the United States. These statutes usually provide: "The findings of the Board (or Commission) as to the facts, if supported by evidence, shall be conclusive." Mr. Stason in his article in 89 Pennsylvania Law Review, p. 1026, lists nineteen such statutes so enacted by the Congress of the United States. In some of these Congress has gone so far as to provide that the review of the ruling of the Board shall not be by a trial court, but shall be by the Circuit Court of Appeals. In this connection, see the National Labor Relations Act, 29 U. S. C. A., Sec. 160(f).

Our State Constitution contains the following pertinent provision:

"Article II, Section 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The taking of the testimony, including the determination of what evidence shall be admitted and what shall be rejected, and the weight to be given thereto, is an important feature of a trial. It often requires a knowledge of the substantive law as well as the application of the rules of evidence. A lay agency, unfamiliar with these principles, might reject material evidence and admit and rely on other evidence that was inadmissible. No system has been provided in this State for reviewing the action of the administrative agency for procedural errors committed in the taking of the testimony, nor for remanding the cause to the agency for a rehearing because thereof. It would indeed be a sorry trial if an agency could thus reject the material evidence of one side and admit and consider the evidence offered by the other, and bind the court as to the facts by the findings made at such a hearing. In this connection, Chief Justice Hughes in an address before the Federal Bar Association, in 1931, said:

"The power of administrative bodies to make findings of fact which may be treated as conclusive, if there is evidence both ways, is a power of enormous consequence. An unscrupulous administrator might be tempted to say, 'Let me find the facts for the people of my country, and I care little who lays down the general principles'."

In the light of the foregoing constitutional provision, it may well be doubted whether the Legislature of this State would have the authority to transfer from the judicial branch of the government to the administrative branch thereof such an essential part of the trial of a lawsuit as the taking of the testimony and the determination of the facts. But we need not here theorize on that question. It is sufficient to say that the Legislature of this State had not undertaken to do so in this instance. The Act here in question provides for a testing of such orders in the district court in the following language:

"Sec. 8. Any interested person affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatisfied therewith, shall have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, or the members thereof, as defendants, to test the validity of said laws, rules, regulations or orders. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid. (As amended Acts 1932, 42nd Leg., 4th C. S., p. 3, ch. 2, sec. 8; Acts 1935, 44th Leg., p. 180, ch. 76, sec. 14.)" Vernon's Ann. Civ. St., Art. 6049c, Sec. 8. It will be noted that the above statute refers to the action as a "suit." It further provides that, "In all such *trials, the burden of proof* shall be upon the ·party complaining of such laws, rule, regulation or order." A trial generally includes a judicial examinaton of the issues between the parties, whether of law or of fact. 42 Words and Phrases, (perm ed.) p. 481. Moreover, there would have been no necessity for the placing of the burden of proof if proof was not to be heard. The Act in question clearly contemplates that the evidence shall be taken anew in the district court.

■ Much of the confusion that exists concerning the effect to be given to the so-called findings of fact by an administrative agency, upon a contest of an order of such agency in court, arises from the failure to take into consideration the kind of order issued· by the agency, and the character of contest that is being made thereon. As above indicated, our statutes do not provide for the making of any findings of fact by an administrative agency. Nevertheless, when the validity of an order of such an agency is contested in court, certain presumptions are indulged in favor of the validity of such order in some instances. If the matter covered by the order is one committed to the agency by the Legislature, and involves the exercise of its sound judgment and discretion in the administration of the matter so committed to it, the court will not undertake to put itself in the position of the agency, and determine the wisdom or advisability of the particular ruling or order in question, but will sustain the action of the agency so long as its con-

clusions are reasonably supported by substantial evidence. This is so because, since the Legislature has seen fit to vest the authority to exercise sound judgment and discretion in the particular matter in the administrative agency, courts will not undertake to usurp the powers committed to the agency, and to exercise the agency's judgment and discretion for it. For example, in contesting an order of a commissioners' court fixing a tax rate, or an order of a school board concerning the management of schools, the court will not put itself in the position of the administrative agency for the purpose of determining whether or not the action was wise. Wright v. Allen, 257 S. W. 980, par. 4 (writ refused); Young County Board of School Trustees v. Bailey, 61 S. W. (2d) 130, par. 2 (writ refused). In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence. This does not mean that a mere scintilla of evidence will sufficie, nor does it mean that the court is bound to select the testimony of one side, with absolute blindness to that introduced by the other. After all, the court is to render justice in the case. The record is to be considered as a whole, and it is for the court to determine what constitutes substantial evidence. The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court. If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside.

On the other hand, of course, if the purported order, rule, or regulation of the agency undertakes to cover a matter not committed by the Legislature to the judgment and discretion of the agency, or if the statute, like Article 6059, construed by this Court in Lone Star Gas Co. v. State of Texas, 137 Texas 279, 153 S. W. (2d) 681, provides otherwise, the substantial evidence rule hereinabove announced does not apply.

The fact, however, that in some instances the action of the agency is to be sustained, if it is reasonably supported by sub-

stantial evidence, does not militate against the hearing of the evidence anew in the trial court. In Texas, in all trials contesting the validity of an order, rule, or regulation of an administrative agency, the trial is not for the purpose of determining whether the agency actually heard sufficient evidence to support its orders, but whether at the time such order was entered by the agency there then existed sufficient facts to justify the same. Whether the agency heard sufficient evidence is not material. In fact, the evidence heard by the agency is not *per se* admissible upon the trial in the district court. Whether it is admissible upon the trial in the district court must depend upon its own merits under the general rules of evidence, and without regard to whether it had theretofore been introduced before the agency. Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106; Railroad Commission of Texas v. Magnolia Petroleum Co., 130 Texas 484, 109 S. W. (2d) 967; Lone Star Gas Co. v. State, of Texas, 137 Texas 279, 153 S. W. (2d) 681.

The judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion delivered March 11, 1942.

Rehearing overruled May 6, 1942.