**TRAPP et al. v. ATLANTIC REFINING CO. et al.**

No. 9366.

Court of Civil Appeals of Texas. Austin.

March 24, 1943.

Rehearing Denied April 14, 1943.

Looney & Clark and Everett L. Looney, all of Austin, for appellants.

Black, Graves & Stayton and John W. Stayton, all of Austin, for appellee Atlantic Refining Co.

Powell, Wirtz, Rauhut & Gideon and John A. Rauhut, all of Austin, for appellee Sun Oil Co.

John E. Green Jr. and Joe S. Brown, both of Houston, and Stanley Hornsby, of Austin, for appellee Gulf Oil Corporation.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment cancelling a permit to drill No. 4 Milas well on a 7.88-acre lease in the East Texas oil field, granted as an exception to the rule "to prevent physical waste" only; and enjoining production thereunder. In large measure the case is companion to and was tried on the same record as No. 9339 of the same style, 169 S.W.2d 797. The tract here is of the same dimensions as the tract there, adjoins the latter on the east, has the same number of wells similarly spaced, and generally the same conditions exist both underground and as to adjacent producing territory. The parties likewise are the same: Atlantic brought the suit against permittees and the Commission. Sun and Gulf intervened; permittees and the Commission appealed, but only the former have filed a brief. Permittees have adopted their brief in No. 9339, and also urge some additional points. The several holdings in our opinion in No. 9339 we now adopt by reference without reiteration; and this opinion will be limited to the additional points not urged in that case.

Point 1 relates to the same general subject as point 8 in No. 9339. The question is presented here, however, somewhat differently. It is urged as of primary importance, and is treated more elaborately and with greater urgency. Here, it was raised by plea in abatement, there, by motion in arrest of judgment. The following is a statement of the pertinent executive orders and orders and recommendations thereunder.

May 27, 1941, Proclamation No. 2487, 50 U.S.C.A.Appendix note preceding section 1, the President declared "an unlimited national emergency"; and the following day created the Office of Petroleum Coordinator, designating as such Coordinator the Secretary of the Interior. April 21, 1941, the Coordinator issued what he designated as "Recommendation," reading in part as follows:

"Section 1503.30. Abandonment of Wells. No oil or gas well shall be abandoned unless and until such well is incapable of yielding a sufficient production of oil or gas or both to provide adequate compensation for the labor employed in its operations, to meet maintenance and repair costs, and to pay such taxes as may be levied against it; provided, however, that any oil or gas well may be abandoned where the production of water from such well tends in, any way to diminish the ultimate recovery of petroleum from the particular reservoir.

"Section 1503.31. Salvage of Casing and Equipment. Except where abandonment is sanctioned under the provisions of Section 1503.30, casing or equipment shall not be salvaged from any oil or gas well if such action will cause or result in the isolation and loss of the remaining reserves of the particular reservoir.

"Section 1503.32. Notice of Intent to Abandon Required. Antecedent notice of the intention to abandon any well capable of producing more than one barrel of crude oil * * * per day shall be filed with the District Director of Production for the district in which such well is located, on a form provided therefor by the Office of

Petroleum Coordinator for National Defense. This notice shall be filed not less than thrity days prior to the proposed date for the commencement of abandonment operations and unless notice of disapproval of the proposed abandonment is received by the person filing the notice of intention to abandon before such proposed date, such person may proceed with the abandonment operations."

These sections were amended May 20, 1942, as follows:

"Chapter XIII—Office of Petroleum
Coordinator for War
"(Recommendation 47—Amendment)
"Part 1503—Production
"Discretion of Courts to Enjoin
Illegally Drilled Wells

"To all state regulatory authorities having jurisdiction over the drilling and abandonment of oil and gas wells and to all operators and owners of oil and gas wells wherever located and to all other persons having an interest in any oil or gas well.

"Pursuant to the President's letter of May 28, 1941, establishing the Office of Petroleum Coordinator for War, §§ 1503.30 to 1503.33 of this chapter (Recommendation No. 47, dated April 21, 1942) are hereby amended by adding thereto to following § 1503.34:

"§ 1503.34. Restrictions upon applicability. The provisions of §§ 1503.30 to 1503.33, inclusive, shall not affect the exercise of such discretion as the courts or the duly authorized regulatory body of any state may possess to enjoin the operation or compel the abandonment of illegally drilled oil or gas wells."

December 2, 1942, the President issued Executive Order No. 9276, establishing the Petroleum Administration for War, defining its functions and duties, the following portions of which are relied upon by permittees:

"By virtue of the authority vested in me by the Constitution and statutes, as President of the United States and Commander in Chief of the Army and Navy, and in order to coordinate and centralize the war policies and actions of the Government relating to petroleum with a view toward providing adequate supplies of petroleum for the successful prosecution of the war and for other essential purposes, it is hereby ordered as follows: * * *

"3. The Administrator shall:

"a. Subject to the provisions of this order, establish basic policies and formulate plans and programs to assure for the prosecution of the war the conservation and most effective development and utilization of petroleum * * *, issue necessary policy and operating directives to parties engaged in the petroleum industry * * *."

By Section 8 of the Executive Order it is provided: "* * * All orders, directives, agreements, recommendations, and other documents issued or entered into under the functions, duties, and authorities of the Petroleum Coordinator for War shall remain in force as the responsibility of the Administrator until such time as he may revoke, alter, or otherwise change such documents under provisions of this Executive Order."

Permittees filed a plea in abatement, asserting the applicability of these orders and recommendations, in support of which, to quote from their brief, the following was shown: "In the trial court Trapp proved without contradiction that the No. 4 Milas well had an allowable of 20 barrels per day, was making its allowable each day, and provided adequate compensation for the labor employed in its operation to meet maintenance and repair costs and to pay such taxes as may be levied against it. It was further shown without contradiction that there was no production of water from the well which tended or would tend in any way to diminish the yield of petroleum from the particular reservoir in which it was drilled, and that the salvaging of the casing or equipment from the well or the abandonment of the well would cause or result in the isolation or loss of the remaining reserves which the operation of the well would otherwise produce."

■ It is permittees' contention that the effect of these orders and regulations was to suspend, while they were in force, the judgment in this case.

That the above executive orders and the orders, rules, regulations and recommendations issued thereunder are paramount, in so far as they may conflict with State laws, is conceded. We have only to consider their applicability to the case at bar.

We do not believe it was the purpose of Section 1503.30, as originally promulgated, to interfere with the conservation laws of the states. The language, "No oil or gas well shall be abandoned," seems clearly to relate to the voluntary act of the owner or producer, and not to an order of an administrative board or a decree of

court made or rendered in the enforcement of state conservation laws. Irrespective of this, however, the Amendment removes all doubt upon the subject. As we said in No. 9339 [169 S.W.2d 801]:

"Whatever may have been the effect of the original Recommendation upon the well in issue, clearer language than that of the amendment excluding this well from the operation of the Recommendation, could hardly be employed."

It is earnestly insisted that the well in issue was not "illegally drilled," and therefore does not come within the purview of the Amendment, because it was drilled under a permit whose validity could only be brought in question in a direct proceeding brought for that purpose. We can not take this narrow, restricted view of the amendment. Its very purpose seems clearly to be to leave the states free to enforce their conservation laws through their own administrative boards and courts. Moreover, a well is none the less illegal because the authorizing permit is presumed valid until successfully attacked in a direct proceeding. The Commission cannot issue a valid (legal) permit to drill a well as an exception to Rule 37 where the conditions existing at the time of the order granting such permit do not authorize it. Such order is invalid (illegal) ab initio. The presumption of validity has reference to the procedure by which and forum in which its validity may be attacked. Such procedure and forum are provided by statute, and they are exclusive. Alpha Pet. Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364. In such proceeding the presumption of validity is only prima facie, and may be rebutted, as was the case here. In any other proceeding or forum the attack is collateral and the presumption of validity is irrebuttable. Final judgment in a direct proceeding decreeing invalidity of an order granting a permit relates back to the date of the original order. As held in Gulf Oil Corp. v. Smith, Tex.Civ.App., 145 S.W.2d 280, 282, "It is void from the beginning." It follows that the distinction between an order void on its face and one void for lack of authority to make it not apparent on its face has no relation to the inherent invalidity of the order, but merely to the avenue open to attack it. We adhere to our holding on this point in No. 9339. In reaching this conclusion we are assuming, arguendo, that the Recommendation had the force and effect of an order.

This point was urged in the Trem Carr case (Railroad Comm. v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022), in a motion of Carr for permission to file a second motion for rehearing and application for stay of judgment predicated upon the same ground. The Supreme Court denied permission to file the motion and application.

Points 2, 3 and 4 relate to matters of procedure before the Commission. The pertinent facts are:

December 23, 1940, the Commission granted a permit to drill the well as an exception to the rule "to prevent physical waste." January 7, 1941, Gulf filed motion for rehearing based on various grounds. January 3, 1941, Atlantic also filed motion based on the sole ground of failure of the Commission to give it notice. Sun filed no motion but stipulated that it owned a half interest in the Atlantic's lease. January 10, 1941, the Commission entered an order signed by Commissioners Thompson and Culberson, granting the "motion" for rehearing of Atlantic and Gulf. Commissioner Thompson testified, over objection, that the Gulf motion was not called to his attention. February 28, 1941, the Commission entered an order refusing the permit. Permittees seasonably filed motion for rehearing which was granted, and May 13, 1941, granted the permit as an exception to the rule "to prevent physical waste" only. The orders of December 23, 1940, and May 13, 1941, each contained the following provision:

"It Is Further Ordered by the Commission that this order shall not be final and become effective until 15 days after it is actually signed by the Commission; provided, that if a motion for rehearing of the application be filed by any party at interest within such 15 day period, this order shall not become effective until such motion is overruled, or if such motion is granted, this order shall be subject to further action by the Commission."

The Commission had a general order relating to rehearings reading: "All such motions shall be filed in writing with the Commission by the applicant for a rehearing, specifying in detail the grounds upon which the rehearing is sought. In no event shall the Commission consider any grounds not specified in said motion for rehearing in passing upon the merits of the same."

Points 2, 3 and 4 read:

"Second Point. The order of the Commission dated December 23, 1940, granting

the permit is valid as against an appeal therefrom by Atlantic (and Sun) because the proof before the Commission and before the court failed to sustain the only ground of error assigned by Atlantic in its motion for rehearing—namely, that it had not been given notice of the hearing had on the application for the permit.

"Third Point. The order of the Commission dated December 23, 1940, granting the permit is valid as against an attack thereon by intervener Sun, because (1) it stands in the same shoes as Atlantic, and (2) it did not, except through Atlantic, oppose the application or file a motion for rehearing, and its grounds of complaint, therefore, have not been passed upon by the Commission and cannot therefore be reviewed by the court.

"Fourth Point. The order of the Commission dated December 23, 1940, granting the permit is valid as against an attack thereon by intervener Gulf, because (1) it being an intervener it can stand in no better position than Atlantic, and (2) because its motion for rehearing is still pending before and undisposed of by the Commission, and its grounds of complaint in this suit, therefore, have not been passed upon by the Commission and jurisdiction of its complaint, if any, is in the Commission and not the court."

These points we overruled for the following reasons:

It is immaterial whether the order of January 10, 1941, granting the "motion" of Atlantic and Gulf, in fact related only to that of the Atlantic, as was sought to be shown by the testimony of Commissioner Thompson. The Commission certainly had jurisdiction over the order of December 23, 1940, when on February 28, 1941, it entered its order denying the permit. That order effectually disposed of all rehearing motions then pending before it. It was not essential to the validity of that order that it be preceded by a formal order granting a rehearing. That order effectually nullified the order of December 23, 1940, even if such effect be not accorded the order of January 10, 1941, which we hold was not the case. It is not necessary, therefore, for us to consider the impeaching effect of Col. Thompson's testimony as related to the order of January 10, 1941, signed by him.

The Gulf had the same rights as an intervenor as it would have, had it brought an independent suit. The order granting the permit was a unity, and could not be set aside as to one protestant and left in force as to others.

It was not necessary for the Sun to file a motion for rehearing in the Commission as a prerequisite to an appeal from its order. Railroad Comm. v. Houston Chamber of Commerce, 124 Tex. 375, 78 S.W.2d 591.

We should add that if permittees' contention that the motion for rehearing of the Gulf is still pending before the Commission were valid, they would be placed in the position of having drilled the well without the authority of the Commission. This for the reason that the original order of December 23, 1940, would be still ineffective by its own terms, and the Commission would be without jurisdiction to pass any of the subsequent orders until the Gulf motion was disposed of. In like manner, the trial court could acquire no jurisdiction over the subject matter so long as jurisdiction remained in the Commission. By drilling the well under assumed Commission authorization, permittees should be held to have estopped themselves from questioning the finality of the Commission's order. This issue, however, is immaterial under our above holding that the December 23, 1940, order was effectually set aside in any event by the order of February 28, 1941. It should also be noted that appellees attacked both the order of May 10, 1941, and that of December 23, 1940.

Points 5 and 6 relate to the sufficiency of the evidence to support the judgment which are covered in our opinion in No. 9339.

The trial court's judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

Our attention is called to the fact that the provision quoted in our original opinion as appearing in both the December 23, 1940, and May 13, 1941, orders, is not contained in the former. It is contained only in the latter. We make this correction in the interest of accuracy. The omission in the former order is, however, of no consequence, as appears from our original opinion. A party at interest had the right under general procedural rules adopted by the Commission to file within 15 days a motion for rehearing of any Commission order. Gulf's motion was filed January 7, 1941, the fifteenth day after the December 23, 1940, order, and within the time allowed

by the rules. If that motion were still pending before the Commission, as contended for by appellants in their 4th point (copied in full in our original opinion), the same results there stated would follow, regardless of absence of the quoted paragraph from the December 23, 1940, order. We are confident, however, in the view expressed in our original opinion, that the Gulf's motion was effectually disposed of by the order of February 28, 1941, which denied the permit.

With the above correction, the motion is overruled.

Overruled.