The Court of Civil Appeals correctly decided this case, and its judgment should be affirmed.

**HINCHLIFFE et al. v. TEXAS CO. et al.**

**No. 9459.**

Court of Civil Appeals of Texas. Austin.

July 28, 1944.

Rehearing Denied Sept. 28, 1944.

Wheeler & Wheeler, of Austin, Eugene Lary and Gerald Mann, both of Dallas, Kyle Vick, of Waco, and Pollard & Lawrence and W. Dewey Lawrence, all of Tyler, for appellants.

T. J. Lawhon, of Houston, Powell, Wirtz, Rauhut & Gideon, by John A. Rauhut, and Black, Graves & Stayton, by John W. Stayton, all of Austin, for appellee.

BAUGH, Justice.

This is a Rule 37 case. Suit was by appellees, as plaintiffs and intervenor, against W. W. Hinchliffe and the Railroad Commission to set aside as invalid permits for wells 3 and 4 on a 4.1-acre tract in the fairway of the East Texas Oil Field in Rusk County. Trial was to a jury, but at the close of the evidence the trial court withdrew the case from the jury and rendered judgment setting aside said permits and enjoined the drilling of said wells or the production of oil therefrom; hence this appeal.

The permits were granted Hinchliffe on February 18, 1941, to prevent confiscation and to prevent waste. Suit was seasonably filed to set them aside but trial was not had until April 10, 1944. In defense to appellees' suit, Hinchliffe, the permittee, pleaded, among other things:

1. In bar of said suit, that the Commission had administered Rule 37, under the "more wells, more oil" theory and had granted exceptions upon such showing. Hence that such practical construction had become a part of the Rule itself warranting the granting of exceptions on that ground.

2. That the Commission had granted a vast number of permits as exceptions to the

rule upon the ground that "more wells, more oil" would ultimately be recovered; that the field has been developed upon such theory; and that to now enforce the spacing provisions of Rule 37 would amount to an unlawful discrimination against appellant, a denial of equal protection of the law, and violate the due process provisions of the state and federal constitutions.

3. That the Commission has heretofore granted numerous exceptions to the Rule in the East Texas field where the conditions and surrounding circumstances were the same or similar to those obtaining in the instant case, and wells have been drilled thereunder and are producing oil from the common field. Consequently, that to deny permittee the same privilege would be discriminatory and contravene both state and federal constitutions.

4. In substance, that wells 3 and 4 were necessary to protect permittee's property from drainage, and to deny them would amount to a taking of his property without due process of law.

5. Alternatively, that by granting numerous exceptions to Rule 37 on the theory of "more wells, more oil" the Commission has rendered Rule 37 void.

The trial court sustained special exceptions to the foregoing special pleas, and the first eight points presented on this appeal complain of that action. The Railroad Commission has filed no brief.

The same contentions, except perhaps special plea 4 above, raised by the same counsel, were presented in Trapp v. Atlantic Refining Co., Tex.Civ.App., 169 S.W.2d 797, writ refused, and decided adversely to appellant. We refer to that case, without reiteration here for a full discussion of these issues. See also Railroad Comm. v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022. Special plea number 4 is, in effect, but a statement of one of the grounds upon which the permit was granted and was comprehended in the appellant's general denial.

Points 8 and 9 complain that the court erred in withdrawing the case from the jury on the ground that the testimony raised fact issues both as to confiscation and as to waste which should have been submitted to the jury. Appellant quotes in his brief certain extracts of the testimony of witnesses Parker and Hudnall which, if considered separate and apart from their testimony as a whole, would appear to raise a fact issue both as to con-

fiscation and as to waste. But when the testimony of these witnesses taken as a whole, both on direct and on cross examination, is considered in connection with the uncontroverted facts, and in the light of adjudicated cases involving the same character of testimony, no fact issue for jury determination was raised. The tract of land on which the permits in question were granted was substantially a rectangle, 300 feet wide north and south and 600 feet long east and west, and contained 4.1 acres. It already had two producing wells. Well No. 1 was near the center of the tract, 347 feet from its east line, and well No. 2 was 107 feet west of well No. 1, giving the tract a density of one well to each 2.05 acres. It was more densely drilled than the eight times surrounding area (the generally accepted method of determining comparative density and drainage) whether delineated by a circle centered in the center of such tract, or by a rectangle. It is not controverted that the underground conditions— sand thickness, porosity, pressure, potential production allowable per well, and oil in place—were uniform in this area and common to the appellant's tract and the surrounding tracts within drainage distance thereof. While, due to variations in distances of some offset wells, some oil was being drained from appellant's lease by wells on adjoining leases, this was compensated by drainage to the 4.1-acre tract through the two wells already drilled thereon. The appellant was, without additional wells, producing more oil per acre per day from his lease than were the owners of adjoining leases. Parker testified that with the two wells he already had, appellant would, during the life of the field, produce a quantity of oil equivalent to the amount of oil in place beneath his tract. This was not contradicted. Obviously he had an equal opportunity with his neighbors to recover his fair share of the oil or its equivalent underlying his tract. Consequently, under numerous adjudicated cases no confiscation resulted without any additional wells. See Gulf Oil Corp. v. Smith, Tex. Civ.App., 145 S.W.2d 280, writ refused.

On the question of waste Hudnall predicated his opinion that the two additional wells were necessary to prevent waste largely, if not entirely, on his disagreement with the spacing provisions of Rule 37, and his theory that the entire field should be more densely drilled in order to ultimately recover the greatest amount of oil. As

above stated, the underground conditions in this area of the field, including appellant's lease, were substantially uniform. This was not controverted. Consequently there was no reasonable basis for the exception to the rule in the instant case. Such is the conclusion announced upon the same character of testimony of the same witness, wherein it was held that it amounted to a collateral attack upon the rule itself, and if applied would nullify the rule, in Railroad Comm. v. Shell Oil Co., Tex.Civ.App., 154 S.W.2d 507, affirmed by the Supreme Court in 139 Tex. 66, 161 S.W.2d 1022.

Nor does the testimony of Hudnall that because of the approach of the water table from the west there would be left, some 15 years hence, some oil under the eastern portion of Hinchliffe's lease, after his two present wells are drowned out. He admitted, however, that this condition was common to all leases in this portion of the field which did not have a well on or immediately near their eastern boundary, and was therefore not exceptional. Obviously, if true, it merely presents a problem for future solution by the Railroad Commission some 15 years hence when it occurs, and not one which applies to appellant's lease only at this time.

Appellant's last point urges that the court erred in refusing to consider the Hall Walker well No. 3 in passing on the validity of the permits attacked in the instant case. This point is not sustained. The permit for the Hall Walker No. 3 well had not been finally acted upon by the Commission when the permits here involved were granted. The Hall Walker No. 3 and the Hinchliffe No. 4 in the southeast corner of the 4.1-acre tract were obviously intended as offsets for each other. The mere fact the Hall Walker No. 3 permit, even if it had been finally acted upon by the Commission when Hinchliffe No. 4 was granted, had not been attacked nor set aside, entitles it to no consideration if it were not a valid permit when granted. That well was never in fact drilled, but was subsequently set aside as invalid by a judgment of the district court. Consequently it was invalid ab initio and furnished no grounds to support the validity of Hinchliffe No. 4. This question was definitely determined against appellant's contention in General American Oil Co. v. Gulf Oil Corp., Tex.Civ.App., 139 S.W.2d 314, writ refused; Gulf Oil Corp. v. Smith, Tex.Civ. App., 145 S.W.2d 280, writ refused; and in

Trapp v. Atlantic Refining Co., Tex.Civ. App., 170 S.W.2d 506, writ refused.

Finding no error in the record the judgment of the trial court is affirmed.

Affirmed.