**WINDSOR GAS CORPORATION,**
Appellant,

v.

**RAILROAD COMMISSION OF TEXAS**
et al., Appellees.

No. 12323.

Court of Civil Appeals of Texas,
Austin.

Nov. 5, 1975.

Rehearing Denied Dec. 3, 1975.

Frank Douglass and Ivan D. Hafley, McGinnis, Lochridge & Kilgore, Austin, for appellant.

John L. Hill, Atty. Gen., Linward Shivers, Asst. Atty. Gen., Austin, for Railroad Commission of Tex.

John W. Stayton, Stayton, Maloney, Hearne & Babb, Austin, for William B. Wilson and others.

PHILLIPS, Chief Justice.

The question before us is whether, under the hereinafter described facts, the owners of a two-thirds mineral interest in a 15,000-acre tract of land have established the jurisdiction of the Texas Railroad Commission under the provisions of Tex.Rev.Civ.Stat. Ann. art. 6008c (otherwise known as the Mineral Interest Pooling Act) to force a

cotenant owner of a one-third mineral interest in the same tract to pool his interest.

Appellant Windsor Gas Corporation either owned or controlled through a limited partnership the mineral interests in two-thirds of the 15,000-acre Wilson Ranch in Sutton County. It applied to the Railroad Commission of Texas under eight separate applications for formation of eight drilling units under the Mineral Interest Pooling Act. The Commission denied the applications, ruling that the Commission's jurisdiction under the Act had not been established. Appellant then filed suit in the district court of Travis County pursuant to which the court entered a take nothing judgment against appellant. We affirm this judgment.

A *précis* necessary to the disposition of this appeal is as follows: Mrs. Nannie B. Davis, and husband, conveyed a 14,537-acre tract in Sutton County (the Wilson Ranch) to Mary Dan Sandlin, Duke Wilson and William B. Wilson as life tenants with the remainder to their respective heirs. Although the grantees were given only life tenancies, they were also given the exclusive right to lease for oil, gas and other minerals for the benefit of themselves and their remaindermen.

Mary Dan Sandlin, a widow, leased her undivided one-third interest in the ranch minerals, including oil and gas, to appellant. Duke Wilson, joined by his wife, then leased his one-third interest in the minerals, including oil and gas, to appellant. Subsequently, appellant made efforts to lease William B. Wilson's one-third interest, but Wilson refused.

At this time it appeared to appellant that it would not be able to lease Wilson's one-third interest in the ranch minerals, and as appellant had already obtained drilling rigs, financing and a purchaser gathering company to buy the gas, appellant decided that it must proceed with drilling on the ranch without Wilson's interest.

On March 27, 1973, Wilson wrote appellant setting out terms of a "tentative offer" to join with it in drilling a single gas well with Wilson's share of drilling costs to be deducted from his share of production. The following day appellant, not yet in receipt of Wilson's letter, wrote Wilson again offering to lease his interest, or in the alternative, to enter into an operating agreement to develop the ranch minerals by the initial drilling of eight gas wells. Appellant's joint operation offer would require Wilson to prepay $53,333.33 as his pro rata share of the estimated $160,000.00 cost of each well. Eight wells, as proposed by appellant, would require Wilson to make a cash investment of $426,666.00. As an alternative to prepayment of his share of drilling costs, appellant proposed that Wilson have his one-third share of drilling costs deducted from his one-third share of production. This would be a risk factor of two to one, meaning that appellant would retain the first $853,332.00 worth of Wilson's one-third share of production to satisfy Wilson's pro rata share of the drilling costs. In addition appellant's proposal required Wilson to pay $2,000.00 per month per well while drilling and $400 per month per well as operating expenses.

There is no evidence in the record indicating any response by appellant to Wilson's letter of March 27.

When Wilson failed to respond to appellant's offer of March 28, within the seven-day deadline contained therein, appellant on April 9, 1973, formed a limited partnership termed Sutton Associates. Sutton Associates consisted of appellant as the general partner and several individual investors as limited partners. Appellant immediately assigned to Sutton Associates its two-thirds undivided mineral interest in fourteen separate 80-acre tracts, each of which was surrounded by 240 acres of land held jointly by appellant and Wilson. The total area of each combined unit equaled 320 acres, the area required by Railroad Commission spacing requirements for the drilling of a gas well.

On May 8, 1973, appellant filed eight separate applications with the Railroad Commission to force pool under the Mineral Interest Pooling Act each of eight 80-acre tracts it had assigned to Sutton Associates and now owned jointly by Wilson and Sutton Associates, with the 240 acres adjacent to each owned in common by Wilson and appellant. The Railroad Commission consolidated appellant's eight applications for hearing purposes, held the hearing, then denied the applications, stating that its jurisdiction under the Act had not been established.

At the trial of appellant's appeal to the district court, the parties joined in a stipulation which reads in part as follows: "Windsor has met all conditions and complied with all requirements of the Mineral Interest Pooling Act, Article 6008c, except the two issues to be determined by the Court, as follows: (1) whether the facts as herein stipulated or otherwise proved result in the existence within each of Windsor's proposed proration units of 'two or more separately owned tracts of land' as that term is used in Mineral Interest Pooling Act, and (2) whether Windsor has made a 'fair and reasonable offer to voluntarily pool' to Mr. Willie B. Wilson as the term is used in the Mineral Interest Pooling Act. These two questions are the sole issues in this lawsuit . . . ."

■ Inasmuch as this Court is of the opinion that appellant's points of error two and four must be overruled, we do not reach its first and third points and there will be no further reference to them in this opinion.[1]

Appellant complains in its second and fourth points of error that the trial court erred in upholding the Railroad Commission's dismissal for lack of jurisdiction of appellant's eight separate applications under the Mineral Interest Pooling Act (Tex. Rev.Civ.Stat.Ann. art. 6008c, Supp.1975), because neither under the preponderance of the evidence rule nor under the substantial evidence rule can such dismissal for lack of a "fair and reasonable offer to voluntarily pool" be sustained.

Since we are of the opinion that appellant's offer to Wilson and the consequences of such offer as described by the testimony of the witnesses in the record before us is not a "fair and reasonable offer to voluntarily pool" under either, or both, the substantial evidence rule[2] or the preponderance of the evidence rule,[3] we are not required to decide which of these rules, to the exclusion of the other, is applicable in this case and we do not so decide.

Appellant's offer was not to pool the mineral interests in sufficient acreage to create one pooled unit of 320 acres; the offer was to pool at one and the same time the mineral interests in sufficient acreage to create eight pooled units of 320 acres each. When this offer was made, not even one well had been drilled on the jointly owned acreage.

The evidence discloses that the average cost to appellant of drilling the eight wells completed on the eight proposed units was between $160,000 and $200,000. Its offer to Wilson that he so pool, if accepted by Wil-

---

1. "*First Point of Error.* The trial court erred in upholding the Railroad Commission's dismissal for lack of jurisdiction of appellant's eight separate applications under the Mineral Interest Pooling Act, Art. 6008c, VACS, because the preponderance of the evidence established the jurisdictional fact of 'two or more separately-owned tracts of land' necessary to confer jurisdiction of the applications upon the Commission under Art. 6008c.

"*Third Point of Error.* The trial court erred in upholding the Railroad Commission's dismissal for lack of jurisdiction of appellant's eight separate applications under the Mineral Interest Pooling Act, Art. 6008c, VACS, because the dismissal was not reasonably supported by substantial evidence of no 'separately-owned tracts of land' in the proposed pooled units."

2. For a definition of the substantial evidence rule see: *Railroad Comm. v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022 (1942).

3. For a definition of the preponderance of the evidence rule see: *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

son, would have obligated him to pay drilling costs of about $426,000, or allow appellant to recoup such costs on a two-to-one basis out of Wilson's one-third share of the proceeds of the sale of production. In other words, Wilson was asked to agree to put up $426,000 in cash or allow appellant to appropriate about $850,000 out of the proceeds of the sale of Wilson's share of the production as a risk factor penalty. This risk factor was established by appellant at two to one in its offer to Wilson, despite the trial testimony of appellant's president, in an effort to explain why Windsor had proposed the drilling of eight wells, that "[W]e have production on both the west side and the east side and we felt rather confident that we had eight proven locations, and leased on the history of the county, all the wells drilled in that area last year, not even taking wells that were offset on each side, had about an 84.6 percent success factor. *So we felt there wasn't any risking.*" (Emphasis added) It has been suggested by an authority in the field that in evaluating an offer to pool voluntarily, a risk penalty in excess of two to one, the maximum risk penalty the Railroad Commission is authorized to impose, may be presumptively unfair.[4]

We hold that appellant's offer for the initial drilling of eight drilling units on a "take it all" or "leave it all" basis, and with a two-to-one risk factor, was not a "fair and reasonable offer to voluntarily pool." This is so in spite of appellant's contention that the eight drilling units were reasonable because there were producing wells on leases offsetting the proposed units and that the eight wells were needed to prevent drainage.

█ It is clear from the language of the Act that "fair and reasonable offer" must be fair and reasonable from the standpoint of the party being forced pooled.[5] Consequently, there is ample evidence before us,

irrespective of the standard used to measure its weight, that the Commission's finding against the fairness and reasonableness of the order must stand.

The judgment of the trial court is affirmed.

---

4. See Ernest E. Smith, *The Texas Compulsory Pooling Act*, 44 Texas L.Rev. 387, 390 (1966).

5. See Smith, *supra*, at 388–389.