FIREMEN'S & POLICEMEN'S CIVIL SERVICE COMMISSION OF HOUSTON, Texas, et al., Appellants,

v.

Jean L. R. TINSLEY, Appellee.

No. 6967.

Court of Civil Appeals of Texas.

Texarkana.

June 27, 1957.

Rehearing Denied July 25, 1957.

Geo. D. Neal, City Atty., and Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellants.

Thos. E. Lichenstein, Houston, for appellee.

CHADICK, Chief Justice.

This is an appeal by the Firemen's & Policemen's Civil Service Commission of the City of Houston, Dave Laufman, J. J. Moore, and Mrs. J. E. Smith as members of the Commission and individually, and Oscar Holcome as Mayor of the City of Houston and individually, and Jack Heard as Chief of Police of the City of Houston and individually, from a judgment of a District Court of Harris County that reinstated appellee as a member of the police force of such city. The judgment of the trial court is reversed and the case is remanded for new trial.

Following the occurrence giving rise to this case, the appellee was indefinitely suspended as a policeman for the city on April 27, 1956, and in a written memorandum the Chief of Police based such suspension upon several charges [1] among them being that

---

1. "In accordance with the provisions of Section 16, Acts 1947, 50th Leg., Page 550, Chapter 325, as amended [Vernon's Ann.Civ.St. art. 1269m, § 16], commonly known as the Firemen's and Policemen's Act, you are advised that as of April 28, 1956, I have suspended Officer Jean L. Tinsley indefinitely.

"Patrolman Jean L. Tinsley has been suspended for acts and conduct in violation of Rule XIII, Section 6, Subsections (b), (d), (e), (k), (l), and (o) of the Firemen's and Policemen's Civil Service Rules of the City of Houston, said section and subsections reading as follows:

"Section 6—Causes of Dismissals and Suspensions

" 'No Fireman or Policeman shall engage in, or be involved in, any one of the following acts or conduct and the same shall constitute cause for the removal from service or the suspension of a Fireman or Policeman:

" '(b) That the employee has been guilty of an immoral or criminal act; but if such act is, at the time the charges are before the Commission on hearing, involved in a criminal proceeding before the grand jury or the courts, the officer or employee so charged may request that the hearing be postponed or continued, with his consent, until such time as the criminal proceedings are terminated, and such request shall be granted, provided the employee shall execute a waiver of all rights to pay during the period of adjournment; and provided further, that such employee may have the hearing or investigation proceed before the Commission at any time on ten days' notice, in writing.

" '(d) That the employee has violated any of the provisions of the Charter of the City of Houston or has violated any of the provisions of the Fireman's Civil Service laws, or the rules and regulations of the Civil Service Commission, or the rules or special orders of the Fire and Police Departments.

" '(e) That the employee has geen guilty of acts which amount to an act of insubordination, or to disgraceful conduct, whether such acts were committed while on duty or off duty.

" '(k) That the employee has been guilty of any conduct unbecoming to an officer or employee of the City of Houston.

the appellee was guilty of conduct unbecoming to an officer and of conduct prejudicial to the good order of the Police Department. Appellee appealed the suspension to the Civil Service Commission and the order was sustained and appellee ordered permanently discharged.

Appeal to a District Court of Harris County followed, and the court, with the consent of appellee's counsel, limited the review to a consideration of the transcript of the record before the Commission. The trial judge tried the case without aid of a jury and entered a judgment in favor of appellee, reinstating him to his position as patrolman with accumulated pay and restoration of all rights and privileges.

In the Trem Carr case (Railroad Commission v. Shell Oil Company, Inc., 139 Tex. 66, 161 S.W.2d 1022), it is said in effect that in matters committed by the Legislature to any agency which involve the exercise of the Agency's sound judgment and discretion in the administration of the matters so committed the court will not undertake to put itself in the position of the Agency and determine the wisdom or ad-

visability of a particular ruling or order in question, but will sustain the action so long as the Agency's conclusions are reasonably supported by substantial evidence. Then the court goes on to give a standard by which to measure evidence to determine whether it is substantial. In this respect it is stated at page 1030 of the reported opinion:

"If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside."

Applying the substantial evidence rule to the testimony of the appellee given at the hearing before the Commission and considering the testimony of the disinterested witness, Foucheux, together with reasonable and legitimate inferences to be drawn from such testimony, it is concluded that the Civil Service Commission's order is sustained by substantial evidence.

It seems unnecessary to recite the evidence in detail but in order to demonstrate

" '(1) That the employee has wilfully shown lack of good moral character.
" '(o) That the employee has been guilty of conduct which was prejudicial to good order of the Fire and Police Departments of the City of Houston.'
"The following acts and conduct of Patrolman Jean L. Tinsley, in violation of the above quoted section and subsections of the Fireman's and Policemen's Civil Service Rules of the City of Houston are hereby specified:
" 'On or about April 25, 1956, Patrolman Jean L. Tinsley went to the home of Robert Dorwin Matchett and wife Glenda Matchett at 806 E. 42nd Street in Houston, Texas, during off-duty hours. After arriving at the above address and with full knowledge that Glenda Matchett was the wife of Robert Dorwin Matchett and was the mother of two small children, Patrolman Tinsley sat on the couch located in the living room and kissed and made love to Glenda Matchett and persuaded her to have sexual intercourse with him in the home. Patrolman Tinsley then instructed Glenda Matchett to go into the bedroom.

" 'During the time when Patrolman Tinsley and Glenda Matchett were making love in the bedroom Robert Dorwin Matchett returned home from his work at Mission Manufacturing Company. Upon entering the home he saw Patrolman Tinsley in the bedroom with his, his wife partially undressed, and Patrolman Tinsley partially undress; whereupon he proceeded to remove his 22-calibre rifle from the closet and fire upon Patrolman Tinsley. Patrolman Tinsley was shot once in the lower regions of his body near the pelvis, and once in each leg. His injuries necessitated Patrolman Tinsley being placed in the Heights Hospital, Houston, Texas.'
"A copy of this statement, together with an Order of Suspension of Patrolman Jean L. Tinsley has been delivered to him in person and the Order of Suspension advised Patrolman Jean L. Tinsley that he has ten days after receipt of the Order of Suspension in which to appeal to the Firemen's and Policemen's Civil Service Commission of the City of Houston.
"J. F. Heard, Chief of Police."

the validity of the holding, perhaps it should be said that considering the facts admitted by the appellee and according full faith and credit to his statement that he innocently went to the residence of the woman involved whose previous loose a-moral conduct was well known to him, only at her repeated invitation and in order to advise her on the selection of a lawyer to handle her divorce and child custody case, and his further admitted acts, and reasonable inferences to be drawn therefrom, that he remained at her place of residence for some 45 minutes, sat down and dropped off to sleep, kissed her and retired to a bedroom with her even after several of her baseless strategems luring him there were revealed and hid behind a door on the approach of some person unknown to him but who later proved to be her husband; coupled with the fact that after being shot three times and wounded by the husband he stopped to ask aid for his wounds and stated to the witness Foucheux that he was a park policeman and had been shot in the woods, is reasonable and believeable evidence that he was engaged in a clandestine affair with the wife of a married man and the mother of young children and that such conduct was unbecoming to an officer and was prejudicial to the good order of the Police Department.

■ At the hearing before the Commission and the hearing in the trial court vigorous objection was made to the introduction and consideration of an affidavit made by the married woman involved. Under authority of McCormick v. Texas Liquor Control Board, Tex.Civ.App., 141 S.W.2d 1004, no writ; Blair v. Board of Trustees, Trinity ISD, Tex.Civ.App., 161 S.W.2d 1030, 1035, no writ; Traders & General Ins. Co. v. Linceum, Tex.Civ.App., 126 S.W.2d 692, no writ, such affidavit appears to be admissible. If the affidavit be considered in connection with the evidence previously mentioned be given credence by the Civil Service Commission, its conclusion could even more readily be reached. The affidavit relates that appellee and affiant were

about to engage in an act of sexual intercourse when the husband arrived on the scene.

■ The fact that an appellee's immediate superiors in the Police Department consider him a good officer and desire to retain him does not militate against the conclusions reached by the Civil Service Commission that his conduct warrants dismissal from the service. In Hynes v. City of Houston, Tex.Civ.App., 263 S.W.2d 839, wr. ref., n. r. e., on facts bearing some similarity to these, an order of dismissal was sustained.

At the hearing in the trial court the judge stated:

"The Court will rule in compliance with the holdings in the last two cases from the Civil Courts of Appeal, that you will be permitted to show what evidence was presented to the Civil Service Commission, and the Court will then rule as to whether there was substantial evidence to justify their decision in the matter. You will be limited to that and nothing else, there will be no trial de novo."

and counsel for appellee acquiesced in such limited review. This court does not agree that the review to be accorded the appellee is so narrowly restricted and the case will not be rendered, because trial of the case in the crucible of an adversary proceeding might result in showing facts that would require entry of a judgment different from that which under the presently existing factual situation would be here rendered. In Trapp v. Shell Oil Co., Inc., 145 Tex. 323, 198 S.W.2d 424, at page 440 of the opinion, it is said:

"* * * The substantial evidence rule does not mean that the parties are limited to the evidence taken by and before the Railroad Commission. The parties may, as the parties have here introduce any relevant legal testimony in the district court of Travis County. The trial court does not have to consid-

er incredible, perjured or unreasonable testimony because such evidence is not substantial. We shall not undertake to formulate a comprehensive definition of the rule, but it is believed that this Court made a fair statement of the rule in the Trem Carr case, to which we have referred in our original opinion."

Appellants' Points 1 and 2 are sustained and the judgment of the trial court is reversed and the case remanded for new trial.