

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 4, 1974

The Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East Eleventh Street
Austin, Texas 78701

Opinion No. H- 197

Re: Authority of State Commissioner of Education and/or State Board of Education to require that an institution of higher education seeking approval of teacher education programs present a performance-based application for approval and related question.

Dear Dr. Edgar:

On behalf of the State Board of Education you have requested an opinion from this office concerning the Board's authority over teacher education.

Specifically, you have asked:

"(1) Is it within the authority of the State Commissioner of Education and/or State Board of Education to include in the provisions for approval of teacher education programs the stipulation that the higher education institution seeking approval must present a performance-based application for approval?

"(2) If the answer to No. 1 is in the negative, is it within the authority of the State Commissioner of' Education and/or the State Board of Education to include in the provisions for approval of teacher education programs two or more alternative plans,

> only one of which would be performance-based
> wherefrom the higher education institution may
> elect to use the alternative of its choice as a basis
> for presenting an application for approval."

In June, 1972 the State Board of Education and the Central Education Agency approved certain new standards for teacher education programs to replace others promulgated in 1955, and it contemplates the approval of additional standards.  Such standards purport to be "performance based. " Your letter defines "performance  based education" as:

> "A process whereby the provisions of a planned
> institutional teacher preparation program [are]
> based on (a) the identification of objectives, (b)
> strategies for implementing those objectives, and
> (c) assessment techniques to ascertain effectiveness
> of the stated objectives. "

In an Agency memorandum of November 10, 1972, addressed to "Superintendents, College/University Presidents, Deans of Education, Graduate Deans, Executive Directors of Education Service Centers, Presidents of Professional Organizations" it is discussed as follows:

> "Competency-Based Teacher Education is a
> systemic process that encompasses clearly
> defined job roles for professionals within the
> school setting, a delineation of competencies
> required of the professional in the job role, and a
> planned program of preparation which allows the
> development of these competencies.  The plan of
> instruction includes a clearly defined purpose,
> and a mechanism to ascertain the degree of
> effectiveness of those activities or courses
> determined to be needed by or required of a
> prospective teacher.  It is a process to preclude
> duplication of efforts, loss of time, and undefined

> activity.  It does, on the other hand, insure
> that once a competency has been identified as
> a desired outcome, adequate opportunities
> to demonstrate an ability to perform that
> competency are given and that if a need exists,
> recyclical application for performance ability
> is provided. "

Broad powers in the field of teacher certification have been given the State Board of Education and the Central Education Agency, but they are not exclusive except in respect to special service and special education teachers.  The qualifications of the latter were specifically made subject to State Board of Education regulation by Article 2922-13 § § 1(3)(d), 1(4)(c), and 1(5)(a) V. T. C. S. , now Section 16. 15(d) of the Education Code.

The basic authority of the Board of Education in the field of teacher education is found in Title 2, Section 11. 26(a) of the Texas Education Code, V. T. C. S. , which reads:

> ". . . . With the advice and assistance of the state
> commissioner of education, the State Board of
> Education shall. . . . (8) prescribe rules and
> regulations for certification of teachers and for
> granting certificates for teaching in the public
> schools of this state in accordance with Chapter
> 13 of this code;. . . . " (Emphasis Added)

This section of the Code is derived from former Article 2675b-8, V. T. C. S. which was first contained in an Act specifying that it did not lessen the powers of governing bodies of State Teachers Colleges, (Acts 1929, 41st Leg. , 2nd, C. S., Ch. 10, p. 12).  State Teachers Colleges (previously "normal schools") became State Senior Colleges in 1965 (Acts 1965, 59th Leg. , ch. 322, p. 673).

Section 13. 032 in Chapter 13 (Title 2) of the Code concerns the rule making power of the Board:

> "(a) The State Board of Education, with the advice
> and assistance of the state commissioner of education,

is authorized to establish such rules and regulations
as are not inconsistent with the provisions of this
chapter and which may be necessary to administer
the responsibilities vested under the terms of this
chapter concerning the issuance of certificates
and the standards and procedures for the approval
of colleges and universities offering programs of
teacher education.

"(b) In order to secure professional advice for his
recommendations to the State Board of Education, the
state commissioner of education shall consider
recommendations of the board of examiners for
teacher education in all matters covered by this
chapter. "

Teaching certificates are the subject of Sections of Chapter 13 of the
Code, derived from former Article 2891-b, V. T. C. S. These sections
clearly show the authority of the Board to approve institutional teacher
education programs resulting in certification. See Sections 13. 036,
13.-037, and 13. 039. But these provisions do not declare that the Board
of Education is empowered to disapprove the programs of State Senior
College System institution, or that certificates may not be awarded to
graduates of the teacher education programs of State Senior Colleges
(formerly State Teachers' Colleges) in the absence of Board of Education
approval. Article 2891b, the source statute, did not expressly repeal
Article 2888, V. T. C. S. , which recognizes the right of State Teacher
College graduates, to teaching certificates and Section 13. 033 of the
Education Code recognizes that certification laws, other than those in
Chapter 13, are also applicable. It provides that persons claiming eligibility
for a certificate are to present to the commissioners "such proof as this
and other certification laws require. " Since Article 2888, V. T. C. S. has
not been expressly repealed, the presumption is that in enacting the new
law the legislature intended the old statute to remain in operation. Attorney
General Opinion H-75 (1973), 53 Tex. Jr. 2d, Statutes § 102.

The Central Education Agency has general control of the public
education system at the state level and rule-making and regulatory authority

over "any activity [in its educational aspects], with persons under 21 years of age which is carried on in the state or federal agencies, <u>except higher education in approved colleges</u>."   Section 11.02 and see Section 11.52(g) for the general powers of the Commissioner.

Teachers salaries may be based on training in institutions <u>recognized</u> (not "approved") by the Commissioner.   Section 16.301(b), Texas Education Code (formerly Article 2922-14 § 1).

Before Title 3 was added to the Education Code, Articles 2644, 2646, and 2647, V.T.C.S. remained in force.   Article 2644, was the opening statute in a chapter devoted to State Colleges and Universities, and provided:

> "Except as herein provided, all laws establishing State teachers colleges or normal institutes for the training of white teachers and providing for their government, control and maintenance are continued in force, and all such colleges which are or may be established by law shall be under the general control and management of the Board of Regents of the State Teachers' Colleges [now Board of Regents, State Senior College System]."

Article 2646, read:

> "<u>Diplomas and teachers certificates of each of the State Teachers' Colleges [now State Senior Colleges] shall authorize the holders to teach in the public schools.</u> "(emphasis added)

Article 2647, subdivision 5, allowed the Board of Regents to control the grades of certificates issued by those institutions, the conditions of issue for certificates and diplomas, and the authority by which they were to be signed.

In 1971, when Title 3 of the Education Code was adopted, these statutes were carried into the Code as Sections 95.21, 95.24, and 95.25 (Acts 1971, 62nd. Leg., ch. 1024, p. 3072 at 3219).

Article 2919e-2, V. T. C. S., adopted in 1965, created the Coordinating Board, Texas College and University System, made it the highest authority in the state in matters of public higher education, and among other things, assigned it the duty to (1) define the various higher education systems, "provided nothing shall be construed to authorize the Board. . . to alter any university system presently existing by virtue of statute. . . .", (2) classify and prescribe the role and scope for each public institution of higher education, (3) review certificate and degree programs offered by such institutions, and (4) order the initiation, consolidation or elimination of degree or certificate programs.   These provisions are now subsections, (b), (d) and (e) of Section 61. 051, Texas Education Code.   Section 61. 070 provides that the duties and functions of the Central Education Agency are not affected by such provisions.

The enactment of Article 2919e-2, V. T. C. S., shifted to the Coordinating Board responsibility for determining what departments of instruction State Senior Colleges might maintain and what courses of study might be pursued there, but it did not alter the statutory effect of a teaching program diploma from a State Teachers' College (Senior College).  See the Revisor's Note following § 61. 051, Education Code, V. T. C. S.

At the time Titles 1 and 2 of the Education Code were adopted in 1969, graduates of teacher education programs in institutions governed by the Board of Regents, State Senior College System, were entitled to Texas Teachers Certificates upon presentation to the State Commissioner of Education of proof of a diploma from such an institution and presentation of such other proof regarding moral and personal qualifications as was required by law.  The presentation of such proof cast upon the State Commissioner of Education a ministerial duty to issue the certificate, whether or not the teacher education program of the State Senior College System institution was one pro forma "approved" by the State Board of Education. In our opinion, the adoption in 1969 of Titles 1 and 2 of the Education Code did not change the law in that regard.

In our view, the duty of the Central Education Agency to award a teaching certificate to a graduate of a State Teachers' College was not affected by the shift of course-defining responsibility to the Coordinating Board, or by the redesignation of such institutions as "State Senior Colleges",

or by the omission of Article 2888 from the Education Code, or by the enactment of Title 3 of the Education Code.   Section 11.26(a)(8) of the Code limits the authority of the State Board of Education to prescribing rules and regulations for certification of teachers and for granting certificates for teaching in the public schools of this state in accordance with Chapter 13 of the Code, not Chapter 95.   That limitation was in effect before Title 3 was adopted.

Clearly, the State Senior College System has been legislatively designed to perform the function, inter-alia, of educating teachers, and a distortion of that design would alter the system contrary to the proscription of § 61.051 (b) of the Education Code.  We are of the opinion, therefore, that graduates of the teacher education programs of institutions composing that System continue to be statutorily entitled to teaching certificates, even absent pro forma approval of such programs by the State Board of Education. The 1971 Act specified that no substantive change was intended by its enactment.  (Acts 1971, 62nd Leg. ch. 1024, p. 3072).

We also note that § 13.042 of the Education Code as amended in 1973 (Acts 1973, ch. 51, p. 78 at 84) requires the Commissioner of Education to issue appropriate Texas teaching certificates to holders of certificates from other states who wish to teach in Texas, provided the college or university in which the teacher completed the requirements for his out-of-state certificate is accredited by a recognized accrediting agency (not the State Board of Education) as an approved teacher training institution. The duty is a ministerial one.

Thus, on two fronts the Legislature has foreclosed the State Board of Education from decreeing that Texas teaching certificates be issued only to those who have completed "performance based" teacher training programs. Also see § 11.31, Texas Education Code.

The "performance based" concept, as we understand your explanation of it, concerns not so much a method of teaching as it does a method of measuring the usefulness (to a teacher) of what is taught the teacher-in-training.  It merely requires that everything in a proposed teacher training program be useful in the development of teachers.  It does not prohibit prospective teachers from taking courses outside the "program", nor does

it affect courses not offered in satisfaction of "program" requirements.

The Legislature may delegate to an administrative agency the power to make rules which have the effect of law when the Legislature itself cannot practically and efficiently perform the function, but the Legislature must declare the policy and fix the standards by which the agency is to be guided. See Attorney General Letter Advisory No. 42 (1973) and cases there cited.

Here, the Constitution declares the policy: the establishment, support and maintenance of an efficient school system--a declaration implemented by the statutes. The Legislature has directed the State Board of Education to accomplish this, in part, by establishing rules and regulations, concerning, among other things, ". . . the standards and procedures for the approval of colleges and universities offering programs of teacher education", which (1) are not inconsistent with applicable Education Code provisions,and (2) may be necessary with respect thereto. These two limitations on the Board's authority to set standards must be given an effective and meaningful, interpretation if the legislative delegation of power to the Board is to be constitutionally valid. Railroad Commission v. Shell Oil Co. 161 S. W. 2d 1022 (Tex., 1942); Gerst v. Jefferson County Savings & Loan, 390 S. W. 2d 318 (Tex. Civ. App., Austin, 1968 error ref'd n. r. e. ).

The Legislature has specified that the rules and regulations of the Board of Education must be consistent with the provisions of Chapter 13 and necessary with respect thereto. See Attorney General Opinion M-386 (1969).

We do not believe a rigid, requirement that all other colleges and universities must institute "performance based" programs to qualify their graduates for Texas teaching certificates is consistent with the plain (and recently expressed) legislative intent that out-of-state institutions and institutions composing the State Senior College System need not do so. Nor, in the light of the most recent legislative action, can we say that such an exclusionary rule would be considered necessary.

Consequently, we answer your first question negatively and answer your second one affirmatively. In our opinion, under present Texas law it is not within the authority of the State Board of Education or the Commissioner to

stipulate that institutions seeking approval for general teacher education programs must present performance-based applications, but the Board, with the advice of the Commissioner, could legally promulgate rules and regulations whereby institutions seeking such approval could choose between alternative plans for program approval (one or more of which might be "performance-based") and submit applications accordingly.

We have reached this conclusion by tracing the development of Texas statutes regarding teacher certification. See: Acts 1905, ch. 124, p. 263 (Art. 2646); Acts 1911, 1st C.S., ch. 5, p. 74 and Acts 1923, ch. 160, p. 341 and Acts 1965, ch. 322, p. 673 (Arts. 2644 and 2647); Acts 1911, p. 189, Sec. 1 (114) and Acts 1921, ch. 129, p. 242 (Art. 2888); Acts 1929, 2nd C.S., ch. 10, p. 12 (Art. 2675b -7, -8); Acts 1949, ch. 39 §1, p. 65 (Art. 2922-13) Acts 1949, ch. 299, Art. V, p. 537 (Art. 2654-5); Acts 1949, ch. 334, Art. IV, p. 625 (Art. 2922-14) Acts 1955, ch. 149, p. 508 (Art. 2891b); Acts 1965, ch. 12, p. 27 (Art. 2919e-2); Acts 1969, ch. 889, p. 2735 (Titles 1 and 2, Texas Education Code); Acts 1971, ch. 1024, p. 3072 (Title 3, Texas Education Code).

You have not asked that we pass upon particular standards and your questions are not directed to the legality of the 1972 standards. We need not refer to them further than to say that some of them are so vaguely and ambiguously stated as to be impossible of objective application, and some of the apparent demands on institutions of higher education may exceed those the Legislature itself could require..

## SUMMARY

Under present Texas law, it is not within the authority of the State Board of Education or the State Commissioner of Education to stipulate that institutions seeking approval for teacher education programs must present "performance-based" applications, but the Board, with the advice of the Commissioner, may promulgate rules and regulations whereby institutions seeking such approval could choose between alternative plans for program approval (one or more of which might be "performance-based") and submit applications accordingly.

Yours very truly,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee