

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

January 11, 1990

Robert Bernstein, M.D., F.A.C.P.       Opinion No.   JM-1135
Commissioner
Texas Department of Health             Re:   Construction of the
1100 West 49th Street                  Human    Immunodeficiency
Austin, Texas    78756-3199            Virus Services Act, arti-
                                       cle 4419b-4, V.T.C.S.
                                       (RQ-1886)

Dear Dr. Bernstein:

You ask three questions regarding the interpretation of section 2.03(h) of the Human Immunodeficiency Virus Services Act (hereinafter the act).   V.T.C.S. art. 4419b-4, et seq. Before we analyze that particular provision, we will briefly examine the act as a whole.

Article 1 of  the act includes  definitions and  designates  the  Texas  Department  of  Health  (hereinafter  the department) as "the primary  resource for HIV education"  in the state.  Article 2  requires the department to  establish and administer  a state  grant  program for  HIV  education, prevention, risk reduction programs, treatment, health,  and social service  programs  for persons  with  HIV  infection. Article 3  establishes  an  HIV medication  program  in  the department.  Article  4 relates  to  HIV testing  and  coun- seling.  Article  5  establishes an  education  program  for state employees  and  requires  state  agencies  to  develop workplace guidelines concerning persons who have AIDS or HIV infection.  Article 6 requires the Texas Department of Human Services to establish  demonstration projects for  providing nursing care to persons with AIDS or HIV infection.  Article 4419b-5, V.T.C.S., authorizes  the department  to develop  a model education  program for  school-age children  regarding sexual issues and  AIDS.  Article  4419b-6, V.T.C.S.,  esta- blishes the  Texas Human  Immunodeficiency Virus  Medication Program under  the  Texas  Health  and  Human  Services  Co- ordinating Council.

The focus  of your  inquiry is  article 2  of the  act, which establishes  a  state  grant  program.   Section  2.01 of the  act  designates  the  department  to  establish  and administer  the  program.   Section  2.02(a)  requires    the

department to establish application procedures and eligibility guidelines for the state grants. Section 2.03 enables the board to adopt rules relating to the services furnished under the program, the priorities of the program, and a process for resolving disputes between the department and a program receiving funds. While only a third of the available funds are to be used for education, prevention and risk reduction, V.T.C.S. art. 4419b-4, § 2.03(g), the department is to give special consideration to organizations that serve persons under 18 years of age. Id. § 2.03(d). Section 2.03(f) requires education grants to be distributed so as not to duplicate existing programs and to provide education services to "populations engaging in behaviors conducive to HIV transmission." Section 2.04 requires programs funded under article 2 to use information and educational materials that are consistent with the current findings of the United States Public Health Service. The department is to evaluate funded programs, id. § 2.06, and to require funded programs to submit records specified by the department. Id. § 2.08. The department is also required to review financial records of programs funded under this article. Id. § 2.09. Apparently the department developed the guidelines,[1] a copy of which was submitted with your letter, pursuant to section 2.02(a).

Section 2.02(a) of the act grants the department express authority to develop eligibility guidelines for grant applicants. However, an administrative agency is bound to exercise its powers consistently with the statute that grants them. See, e.g., Railroad Comm'n v. Shell Oil Co., 161 S.W.2d 1022 (Tex. 1942); Gulf Coast Water Co. v. Cartwright, 160 S.W.2d 269 (Tex. Civ. App. - Galveston 1942, writ ref'd w.o.m.).

Your questions concern the department's responsibility for the grant program established in article 2. Your first question reads as follows:

> What is the proper construction of Subsection 2.03(h)?

---

1. We understand that the guidelines, now identified as being in "draft form," have not been formally adopted or published in the Texas Register pursuant to the Administrative Procedure and Texas Register Act, article 6252-13a, V.T.C.S.

Section 2.03(h) reads as follows:

> Grants may not be awarded to an entity or
> community organization that advocates or
> promotes conduct that violates state law.
> This subsection does not prohibit the award
> of a grant to an entity or community organi-
> zation that provides accurate information
> about ways to reduce the risk of exposure to
> or transmission of HIV.

The department's proposed guidelines first quote sec-
tion 2.03(h) and follow with the department's interpretation
of the subsection as follows:

> This language has been interpreted by the
> Texas Department of Health to mean that an
> entity or community organization is not
> eligible to receive a grant under Article 2
> of the bill if the entity, organization or
> any person employed by or volunteering for
> the entity or organization acts directly or
> indirectly within the scope of his or her
> activities for the organization (including
> the person's mere presence upon the premises
> of the entity or organization)[2] to influence
> legislation by encouraging, supporting or
> actively recommending the modification or
> repeal [of] state laws regulating or pro-
> hibiting types of personal conduct recognized
> by medical experts to transmit HIV infection.
> The department further interprets the
> language 'state laws regulating or prohi-
> biting types of personal conduct recognized
> by medical experts to transmit HIV infection'
> to include at least:
>
> 1. Sec. 21.06 of the Penal Code, pro-
> hibiting homosexual conduct;

---

2.   This is only one of many provisions of the guide-
lines that raise serious constitutional issues.  Inasmuch as
we determine that the proposed guidelines are completely
outside the authority granted by the statute, we need not
address the constitutional concerns of freedom of
association, freedom of speech, and freedom to petition the
government.

2. Secs. 43.02 and 43.04 of the Penal Code, relating to prostitution and the promotion of prostitution;

3. Chapters 481 and 483 of the Health and Safety Code, regulating the use of controlled substances, simulated controlled substances, and dangerous drugs.

The department more specifically interprets the language "influence legislation" to prohibit:

1) Any attempt to influence any legislation through a move to affect the opinions of the general public or any segment thereof; and

2) Any attempt to influence any legislation through communication with any member or employee of a legislative body or with any government official or employee who may participate in the formulation of legislation.

3) The expenditure of any amount to influence the selection, nomination, election, or appointment of any individual to any federal, state, or local public office in a political organization, or election of Presidential or Vice Presidential electors (whether or not such individuals or electors are selected, nominated, elected, or appointed).

In your letter, you indicate that the department developed its guidelines based on its understanding that the legislature intended that grant funds not be awarded to organizations that lobby for the repeal of certain criminal statutes. You indicate that this understanding was grounded in comments made by the state representative who originally proposed the language in question here. While we think that the statute is clear on its face and needs no further construction, we reiterate the rule that legislative intent is not to be discovered in the expressed intent of one member of the legislature. Commissioners' Court of El Paso County v. El Paso County Sheriff's Deputies Ass'n., 620 S.W.2d 900 (Tex. Civ. App. - El Paso 1981, writ ref'd n.r.e.). If the legislature intended to disallow grants to organizations that lobby, such intent is not expressed in the law.

This statute is clear on its face. The act disallows the awarding of grants to entities that advocate or promote conduct that violates state law. When the language of a statute is clear and unambiguous, the plain language is controlling. See generally Sutherland, Statutory Construction § 46.01 et seq. (4th ed.). Black's Law Dictionary defines "advocate" as "To speak in favor of or defend by argument. To support, vindicate, or recommend publicly." Black's Law Dictionary 51 (5th ed. 1979). The dictionary defines "promote" as "To contribute to growth, enlargement, or prosperity of; to forward; to further; to encourage; to advance." Id. at 1093.

The use of controlled substances, for example, is conduct that violates state law. For one to advocate or promote the use of controlled substances, one would necessarily defend their use or encourage others to use them. While lobbying for the repeal or amendment of the Controlled Substances Act is a type of advocacy, it is not advocacy of conduct prohibited by law. A lobbyist may advocate a change in the law by encouraging various legislative actions. For example he may seek the introduction of a bill into the legislature, or he may encourage a particular vote, or he may urge an amendment to a bill; however, none of these acts violates state law.

Lobbying activity, identified in the proposed guidelines as activity that disqualifies an organization from receiving grant funds, is a peculiarly protected form of speech. It is, first of all, speech protected by the United States and the Texas Constitutions. U.S. Const. amend. I; Tex. Const. art. I, § 8; Attorney General Opinion H-18 (1973). Secondly, it is speech that is regulated in that persons who receive or expend funds to influence legislation must disclose the amounts received and expended. See generally Gov't Code ch. 305. In adopting that regulatory statute, the legislature recognized the importance of lobbying activity to democratic institutions as follows:

> The operation of responsible democratic government requires that the people be afforded the fullest opportunity to petition their government for the redress of grievances and to express freely their opinions on legislation, pending executive actions, and current issues to individual members of the legislature, legislative committees, state agencies, and members of the executive branch.

Gov't Code § 305.001.

Furthermore, the legislature has elsewhere prohibited the expenditure of appropriated funds for lobbying activity. The current Appropriations Act prohibits the use of funds that are appropriated in the act for influencing the passage or defeat of any legislative measure. Acts 1989, 71st Leg., ch. 1263, art. V, § 5, at 5760.

The distinction between lobbying activity and advocacy of conduct that violates state law is illustrated by recent examples of public officials' advocating changes in criminal statutes. Some public officials concerned about the drug problem in this country have recently advocated the repeal of criminal penalties attached to the use of controlled substances. Similarly, a brief submitted pursuant to your letter describes the testimony of a former chairman of the Texas Board of Health and Chief Administrator of Parkland Hospital in Dallas before the Texas House of Representatives Appropriations Committee in 1987. The chairman, according to the brief, advocated the repeal of section 21.06 of the Penal Code to encourage homosexuals to voluntarily seek HIV testing and counseling. Under the department's interpretation of section 2.03(h), those officials would be ineligible to receive education grants.

On its face, subsection 2.03(h) only prohibits the grant of funds to persons who advocate or promote illegal conduct. This language does not authorize the broad restrictions reflected in the department's proposed guidelines. The department's interpretation that lobbying activity disqualifies grant applicants is without statutory support.

Your second question is based on the premise that section 2.03(h) precludes the award of grants to entities that lobby for revision or repeal of criminal statutes. Having determined that such an interpretation is without merit, it is unnecessary to answer your second question.

Finally, you ask:

> Does Subsection 2.03(h), or any other provision of S.B. No. 959 [the act] require the department to exclude from consideration [for a grant] an organization that has homosexuals among its officers, board, general membership, paid staff or volunteers, merely because the individuals are homosexuals?

Neither section 2.03(h) nor any other provision of the act requires that result. The only statutory basis in section 2.03(h) to deny a grant to an organization is a finding by the department that the organization advocates or promotes illegal conduct. The composition of an organization's membership or board is not determinative of the organization's eligibility for a grant.

## S U M M A R Y

Section 2.03(h) of the Human Immuno-deficiency Virus Services Act prohibits the award of a state grant to an entity or organization that advocates or promotes conduct that violates state law. Lobbying is not conduct that violates state law. The composition of an organization's membership or board is not determinative of the organization's eligibility for a grant.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General