**TEXAS STATE BOARD OF LAW EXAMINERS, Appellant,**

v.

**Charles F. MALLOY, Appellee.**

**No. 3–90–097–CV.**

Court of Appeals of Texas,
Austin.

July 24, 1990.

Rehearing Overruled Aug. 15, 1990.

---

Jim Mattox, Atty. Gen., Dwight Martin, Asst. Atty. Gen., Austin, for appellant.

Jerry Nugent, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellant Board of Law Examiners denied the application of appellee Charles F. Malloy to take the July 1989 bar examination upon the basis that he lacked "good moral character." Upon appeal, the district court of Travis County concluded that the Board's determination was not supported by substantial evidence. Accordingly, the district court rendered judgment setting aside the Board's determination and remanding the cause to the Board with instructions that the Board permit Malloy to sit for the February 1990 bar examination and that the Board certify him to the Supreme Court for admission if he passed.[1]

---

1. After rendition of judgment, the Board filed a notice of appeal. The Board then refused to permit Malloy to take the February 1990 examination. In response to his original proceeding

This Court will affirm the judgment of the district court.

The Board attacks the judgment by two points of error: (1) the Board's determination was supported by substantial evidence, and (2) the district court erred in remanding the cause to the Board with instructions.

■ The district court's task was to determine whether or not the Board's order was reasonably supported by substantial evidence. Rule XI(m), Rules of the Supreme Court Governing Bar Admissions. An order is supported by substantial evidence if the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency reached. *Texas St. Bd. of Dental Exam. v. Sizemore*, 759 S.W.2d 114 (Tex.1988); *Dotson v. Texas State Bd. of Med. Exam.*, 612 S.W.2d 921 (Tex.1981); *Railroad Comm'n v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022 (1942).

■ Consideration of the Board's first point of error requires an examination of the Board's record. An orderly examination is made difficult by the fact that the Board's record appears higgledy-piggledy in the transcript rather than as an exhibit in the statement of facts.[2]

There is no formal Board order in the administrative record; instead, there appears the following excerpt from the July 1989 minutes of the Board:

CHARLES F. MALLOY—An applicant for the July 1989 bar examination. This was a hearing on his Declaration and Application. He was advised of his right to legal counsel, but elected to proceed pro se. The issue considered by the Board was whether the applicant's responses to Questions 6(b), 10(g), and 11(b) of his Declaration of Intention to Study Law indicated a lack of good moral character and fitness. During the hearing, the applicant's objections to the introduction of parts of Board Exhibits # 2 and # 5 were overruled. After considering the evidence and testimony, upon motion duly made and seconded, it was voted by a majority that CHARLES F. MALLOY does not possess the present good moral character required for admission to the Bar of Texas by the *Rules Governing Admission to the Bar of Texas* and the statutes. In support of this decision, the Board found:

(1) that the applicant failed to cooperate in the investigation of his Declaration of Intention to Study Law in that, at the time he filed the Declaration, he failed to fully respond to Question 6(b) relating to employment during the past ten years; Question 10(g) relating to documentation of criminal charges; and Question 11(b) relating to examination or treatment for mental, emotional or nervous disorders;

(2) that the applicant has exhibited a continuing attitude of immaturity and lack of respect for authority through the years;

(3) that the applicant demonstrated a lack of candor in his testimony before the Board;

(4) that there is clear and rational connection between CHARLES F. MALLOY's failure to cooperate in the investigation of his Declaration, his attitude of immaturity and lack of respect for authority, and his lack of candor on the one hand and the likelihood that he would injure a client, obstruct the administration of justice, or violate the Code of Professional

filed here, this Court ordered the Board to allow Malloy to sit for the February examination. From the briefs, we learn that Malloy sat for the February examination, but that the Board presently refuses to give Malloy his examination scores.

**2.** For a proceeding governed by the Administrative Procedure and Texas Register Act, Tex.Civ. Stat.Ann. art. 6252–13a (Supp.1990), the legislature has prescribed the procedure for bringing

forward an administrative record for review by an appellate court. In such proceeding, the party seeking judicial review shall offer and the district court will admit the agency record into evidence as an exhibit. APTRA 6252–13a, § 19(d)(3). Although proceedings before the Board of Law Examiners are not subject to APTRA, art. 6252–13a, § 3(1), this Court suggests that all concerned would benefit by observance of § 19(d)(3).

Responsibility if he were licensed to practice law on the other hand;

(5) that CHARLES F. MALLOY does not possess present good moral character as defined in Rule II(b) of the *Rules Governing Admission to the Bar of Texas* and as required by Section 82.-028(c)(1) of the Texas Government Code.

There also appears in the administrative record a copy of the letter from the Board's Executive Director addressed to Malloy. The letter sets out, in large part, the excerpt from the Board's minutes. In the absence of a more formal document, this Court will treat the excerpt from the minutes as the Board's order.

As indicated in the excerpt from the Board's minutes, the basis for the Board's refusal to permit Malloy to sit for the bar examination was that he did not presently "possess good moral character." To take the bar examination, an applicant, among other things, must be of good moral character. Rule II(b) of the Supreme Court's Rules Governing Bar Admission defines good moral character as:

a functional assessment of character and fitness of a prospective lawyer. The purpose of requiring an applicant to possess present good moral character is to exclude from the practice of law those persons possessing character traits that are likely to result in injury to future clients, in the obstruction of the administration of justice, or in a violation of the Code of Professional Responsibility. These character traits usually involve either dishonesty or lack of trustworthiness in carrying out responsibilities. There may be other character traits that are relevant in the admission process, but such traits must have a rational connection with the applicant's present fitness or capacity to practice law and accordingly must relate to the State's legitimate interests in protecting prospective clients and the system of justice.

The Board's conclusion that Malloy lacked good moral character was grounded upon Malloy's answers to questions 6(b), 10(g), and 11(b) in his declaration of intention to study law and upon his testimony at the Board hearing that related to those answers. Question 6(b) and its answer are as follows:

6. List all employment you have had during a period of three months or more during the last ten years or since you became sixteen years of age, whichever time is shorter. Include temporary or parttime work if the work required ten or more hours per week. State below each employment, business or occupation (begin with present or most recent):

(b) NAME OF EMPLOYER _____ Peat, Marwick, Mitchel [sic] & Co. _____
Address: _____?_____ Austin, Texas _____
           Street No.        City      State    Zip
Date employed: From_____ 1/85 _____ To _____ 5/85 _____
Position held:_____ Assn Tax Specialist _____
Supervisor: _____ Vern Ebert _____
Reason for termination:Why don't you ask them & let me know because I have been wondering now for 3½ years.

---

Question 10 inquired of the applicant his involvement in various types of legal proceedings. Questions 10(c) and (d) and Malloy's answers read:

10. Answer the following questions:

(c) Have you, within the last fifteen (15) years, been formally charged with any violation of the law? (You may exclude minor traffic violations) .................................................. Yes ____
                                                       (yes or no)

(d) Have you ever been convicted of an offense, placed on probation, or granted deferred adjudication or any type of pretrial diversion, either state or federal? ..................................... <u>Yes</u>

(yes or no)

If your response to the foregoing question is YES, please answer the following:

Was probation successfully completed? ...................... <u>Pending</u>

(yes or no)

Upon completion of probation, were charges dismissed? ...... <u>Pending</u>

(yes or no)

Are you presently on probation? ........................... <u>Yes</u>

(yes or no)

In question 10(g), the applicant is directed to supply full details including court records. In response to 10(g), Malloy submitted more than a handwritten page of details. Footnote 4, *infra*.

11. Have you, within the last ten years:
    (a) Been examined or treated for mental, emotional or nervous disorders? ................................................. <u>Yes</u>

    (yes or no)

    (b) Been voluntarily or involuntarily committed to a hospital or institution as a result of mental, emotional or nervous disorders? .... <u>No</u>

    (yes or no)

    If you answer either (a) or (b) "YES," give details, including dates of treatment or confinement, where treated and by whom, and your reason for seeking treatment.

    <u>Yes, I saw a counselor as a youth (17–18 yrs. old). This stuff</u>
    <u>is really none of your business as it does not affect my ability</u>
    <u>to practice law in Texas.</u>

Finally, question 11 and its answers are as follows:

We will discuss the questions and answers *en seriatim*. The Board claims that Malloy did not fully respond to question 6(b) (his reasons for leaving Peat, Marwick & Mitchell). Because the question was not fully answered, according to the Board, the Board argues that it could take that fact into consideration in determining Malloy's character.

Malloy's testimony at the hearing touched upon his employment termination with the accounting firm:

Q. Mr. Malloy, what was the reason for your termination from Peat, Marwick?

A. I don't know. All they told me was I was not cut out for public accounting. That is the only reason they gave me, and I have been wondering the same—what I told you here is, indeed, what I have been wondering ever since then. It is kind of bothering me. I was legitimately asking you that.

Q. Did you know that was the reason for your termination at the time you filed your Declaration?

A. That I had been told that?

Q. Yes, sir.

A. Yes.

The Board's position seems to be that because Malloy did not answer precisely that he was told that he was being terminated because he "was not cut out for public accounting" that his answer was lacking in candor. In its brief, in fact, the Board claims that his failure to put down these words in the application is proof certain of a character fault.

At best, the meaning of the phrase "not cut out for public accounting" is obscure.

What meaning the accounting firm assigned to the phrase is, of course, known only to the firm. Does the expression relate to work habits or proficiency, or to job performance or attitude? We suggest that, had Malloy supplied the Board with the exact expression offered him by the accounting firm, he would have received by return mail an inquiry from the Board requesting an explanation. Malloy testified that he was good at tax work. He made high grades in law school in tax and tax-related subjects. It is no small wonder that Malloy was left in the dark by the reason offered for letting him go.

We now turn to Malloy's answers to questions 10(c) and 10(d). Question 10 inquired generally of the applicant's involvement in past legal proceedings. Malloy detailed two past arrests in 1987 and 1988. In 1987, he was charged in Dallas County with disorderly conduct and evading arrest. In 1988, he was charged with "failure to identify" in the municipal court of El Lago, Texas. Although Malloy did not supply the court records with his application, the Board obtained the records.[3]

The Dallas County charges stemmed from an incident at a birthday party attended by Malloy and other law students. Someone complained about the noise generated by the party. The Dallas police forced their way into the apartment and seized the hostess. Malloy and others, apparently trying out their newly found knowledge of criminal law, proceeded to lecture to the police that they had improperly entered the apartment and had no right to seize the hostess. In response, Malloy and the others were arrested. The complaint for evading arrest was dismissed on motion. The disorderly conduct complaint was tried to a jury and Malloy was found "not guilty."

The complaint in El Lago arose from a prank at a fast-food drive-in. As we understand, the matter resulted in a "deferred adjudication" and the complaint was dismissed.

Malloy urges that his answers to questions 10(c) and 10(d) may not form the basis for the Board's denial of his application to take the examination. We agree.

In support of his position, Malloy points to Tex.Gov.Code Ann. §§ 82.023 and 82.027 (1988). Section 82.023 pertains, in general, to the declaration of intention to study law. Subsection (b) provides:

The form for the declaration must clearly identify those conditions of character and fitness set out in Section 82.027 that may be investigated by the board and that may result in the denial of the declarant's application to take the examination.

Section 82.027 relates to the application for examination and identifies the conditions of character and fitness that the Board may investigate and that may form the basis for denial of an application to take the bar examination. Subsection (b)(1) provides:

The application consists of a verified affidavit stating that since the filing of the applicant's original declaration of intention to study law, the applicant:

(1) has not been formally charged with any violation of law, excluding:

(A) cases that have been dismissed for reasons other than technical defects in the charging instrument;

(B) cases in which the applicant has been found not guilty;

(C) minor traffic violations;

(D) cases in which the record of arrest or conviction was expunged by court order;

(E) pardoned offenses; and

(F) Class C misdemeanors;

Disorderly conduct and failure to identify are Class C misdemeanors. Tex.Pen.Code Ann. §§ 42.01 and 38.02 (1989). Hence,

---

3. In explaining his failure to supply the court records, Malloy pointed out that he did not have time to submit the records with the declaration and also meet the filing deadline:

This declaration was filed to meet the filing deadline so the court documents were not obtainable in time to include herein. If the investigator feels these records are necessary in order to make his/her determination, please use the authority granted to me by the Authorization and Release to the Supreme Court of Texas Board of Law Examiners to obtain such records, or please contact me about obtaining and forwarding such records.

neither disorderly conduct nor failure to identify may be the subject of Board investigation or may result in denial of an application to take the bar examination. Tex. Gov't Code Ann. § 82.027(b)(1)(F). Moreover, the disorderly conduct complaint was tried to a jury and Malloy was found "not guilty." *Id.* at § 82.027(b)(1)(B). Finally, the evading arrest charge was dismissed by the county court. *Id.* at § 82.027(b)(1)(A).

As we understand the law and the facts, Malloy had no duty to respond affirmatively to questions 10(c) and 10(d). Nonetheless, because Malloy *did* answer affirmatively, the Board claims that it was empowered to deny his application, not for the content of his answers, but instead "for the way he answered questions 10(c) and 10(d)." The Board characterizes Malloy's answers as "curt dismissals" and his failure to supply the court records as "flagrant non-compliance with the requirements to furnish records."

■ This Court is troubled by the Board's basic premise that it has the power to deny an applicant the opportunity to sit for examination based simply upon the manner in which he answers the application and without reference to the content of the answers. We know of no such authority and the Board has directed our attention to none. Ordinarily, of course, an agency has only such powers as are expressly granted to it together with those necessarily implied from the authority inferred or duties

imposed. *See Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158, 160 (1961). The same rule should be applicable to the Board of Law Examiners.

■ Aside from the problem of the Board's authority, the Board's characterization that Malloy was in "flagrant non-compliance with the requirement to furnish records" is erroneous. Malloy reasonably explained his inability to send the court records at the same time that he filed his application. Note 3, *supra.* Finally, the Board's description of Malloy's answer as being a "curt dismissal" is inaccurate. His answer is set out in the margin.[4] In his answer, Malloy adequately identified the charges and their disposition.

■ Finally, the Board contends that Malloy's answer to question 11 is "perhaps the best evidence that Malloy lacked the required character to practice law in Texas." In response to question 11, Malloy responded that he was counseled by a psychological examiner when he was seventeen. His need for counseling stemmed from a tragic accident that claimed the life of his younger brother. Unfortunately, Malloy took it upon himself to comment upon the propriety of the Board's inquiry: "Yes, I saw a counselor as a youth (17–18 years old). This stuff is really none of your business as it does not affect my ability to practice law in Texas."

4. **Give full details regarding all "YES" responses in Question 10,** including dates, exact names and addresses of courts, cause numbers and styles of cases, offenses charged, facts, and the disposition. ATTACH COURT RECORDS. Give the names and addresses of legal counsel:

I was charged with disorderly conduct & evading arrest in Dallas County in the spring of 1987. The evading arrest complaint was quashed on its face with no further action. The disorderly conduct [*sic*] went to a full jury trial on the merits resulting in a not guilty verdict. The Dallas police arrested me along with two other law students & a MBA student when we objected to the police officers' sexual and physical abuse of a young lady. My attorney was Gary Udashen of Dallas, TX. If you care to look into this further, you can get the formal court documents yourself, or ask me and I will submit them later. In August 1988, I was charged with failure to

identify in El Lago, TX. As a matter convenience [*sic*], I agreed to a deferred adjudication on Nov. 6, 1988 in El Lago municipal court on the recommendation and assurances from the judge and prosecutor that I would not have to report, disclose or otherwise discuss this on my bar application. Obviously they were wrong, and this would be grounds for reversing my plea of no contest and agreement to take deferred adjudication. I represented myself, pro se. Contact the court clerk, judge, or prosecutor if you have any additional questions. If there is a problem with this event, my position on this is that it is a pending matter. I have the right to a trial de novo, and the 5th, 4th, and 14th amendments to the Constitution of the United States allows [*sic*] me to not discuss this with you until the matter is closed. I should not have to waive my constitutional rights in order to practice law in Texas.

Malloy's answer did furnish the Board with the name and address of the psychological examiner. The agency record contains the examiner's letter to the Board. The examiner's letter explains that the counseling concerned family conflicts between parent and child due to parental inconsistencies and personal problems relating to the death of the younger brother. Far from failing to disclose or cooperate, Malloy "over disclosed" concerning a private matter not related to any legitimate inquiry by the Board. Such proof is not substantial evidence showing a likelihood that Malloy would injure clients, obstruct justice, or would not properly discharge his duties.

An examination of the agency record indicates that Malloy's mistake in the involved answers was in the choice of words. It is apparent that the Board viewed Malloy's language as flippant and perhaps even disrespectful. Although we agree that Malloy could and should have chosen better-suited words, his use of such language will not support the conclusion that he lacked good moral character. This Court's disposition of this cause should not be viewed as an endorsement of Malloy's way of answering some of the questions in the declaration. We are convinced, however, that the Board has mistaken a spirited bumptiousness for a lack of good moral character. In short, this Court has concluded that Malloy's answers and testimony are not substantial evidence of a lack of good moral character.

Because there was no substantial evidence in support of the Board's refusal to permit Malloy to sit for the examination, the district court properly set aside the Board's decision and remanded the cause to the Board with instructions that he be permitted to take the February 1990 examination and be certified to the Supreme Court if he passed. *See Lewis v. Guaranty Federal Savings and Loan Ass'n*, 483 S.W.2d 837, 844 (Tex.Civ.App.1972, writ ref'd n.r. e.).

The Board's points of error are overruled, as is Malloy's request for damages for delay.

The judgment of the district court is affirmed.