Tx Bd. of law exmrs v. stevens 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 





NO. 3-92-005-CV





THE BOARD OF LAW EXAMINERS OF THE STATE OF TEXAS,



 APPELLANT


vs.





EDWARD H. STEVENS, III,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 441,226, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 We withdraw the previous opinion of this Court, dated October 7, 1992, and
substitute the following in its place.

 The Texas Board of Law Examiners (the "Board") denied Edward H. Stevens, III's
application for admission to the State Bar of Texas on the basis that he lacks "good moral
character." Stevens appealed the Board's denial to the Travis County district court, which
concluded that the Board's decision was not supported by substantial evidence. Accordingly, the
district court reversed the Board's decision and remanded the cause for further proceedings. By
a single point of error, the Board complains that the district court erred in failing to find that the
Board's order was supported by substantial evidence. We will affirm the district-court judgment.

BACKGROUND


 Stevens, a member of the Mississippi State Bar for approximately twenty years,
applied for admission to the State Bar of Texas in August 1985. In his application, Stevens
disclosed two civil judgments entered against him for certain debts. Stevens indicated that he was
financially unable to satisfy the judgments. Supplemental investigations revealed a third
unsatisfied judgment as well as past difficulties with the Internal Revenue Service stemming from
Stevens' failure to pay income taxes and file returns. Following a hearing in February 1988, the
Board notified Stevens that his request for admission to the Texas Bar was denied.


DISCUSSION



"Good Moral Character"


 Applicants seeking admission to the state bar of Texas must possess good moral
character. (1) The Board of Law Examiners is empowered to investigate the moral character of each
applicant for a license. Tex. Gov't Code Ann. § 82.028(a) (West 1988); Rule III(d), Rules
Governing Admission to the State Bar of Texas. (2) The purpose of requiring an applicant to possess
good moral character is "to exclude from the practice of law those persons possessing character
traits that are likely to result in injury to future clients, in the obstruction of the administration of
justice, or in the violation of the Code of Professional Responsibility." Rule II(b).

 The legislative directive to the Board to certify the "good moral character" of each
attorney admitted to practice law in this state is troublingly indefinite. The Rule adds little
precision: "Good moral character is a functional assessment of character and fitness of a
prospective lawyer." Rule II(b). The remainder of the rule suggests excluding those with
character traits of dishonesty or lack of trustworthiness in carrying out responsibilities, "but such
traits must have a rational connection with the applicant's present fitness or capacity to practice
law and accordingly must relate to the State's legitimate interest in protecting prospective clients
and the system of justice." Id.

 The United States Supreme Court has warned that "good moral character" is a
"vague qualification, which is easily adapted to fit personal views and predilections, [and] can be
a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." 
Konigsberg v. State Bar of Cal., 353 U.S. 252, 263 (1957). In a recent decision, this Court
determined that the Board of Law Examiners had "mistaken a spirited bumptiousness for a lack
of good moral character." Texas Bd. of Law Examiners v. Malloy, 793 S.W.2d 753, 760 (Tex.
App.--Austin 1990, writ denied). Critics of using "good moral character" as a measure of the
suitability of prospective attorneys note that such a vague qualification opens the door to arbitrary
and subjective judgments with no demonstrable relationship to the protection of future clients or
the administration of justice. See Stephen K. Huber, Admission to the Practice of Law in Texas:
A Critique of Standards and Procedures, 17 Hous. L. Rev. 687, 727-28 (1980). 

 These same critics advocate listing specific grounds of wrongful conduct that might
exclude a prospective attorney from the practice of law, such as particular acts involving
dishonesty or financial misdeeds and conviction for certain serious crimes. "A refusal to admit
an applicant on character grounds should not be permitted unless the applicant had committed one
of the serious wrongful acts specified in the character rules." Id. at 728. Other critics question
the very premise that past behavior is a significant predictor of future legal performance, pointing
to the lack of factual data supporting the efficacy of character investigation in identifying
potentially harmful lawyers. See id. at 729-30. (3) Guided by the foregoing caveats and concerns,
we turn now to the case before us.



The Standard of Review


 The Board is charged with evaluating an applicant's character in order to protect
the public from prospective lawyers who can be identified as having character traits that would
probably harm future clients or demean the system of justice. In fulfilling this responsibility, the
Board must refrain from imposing its own subjective judgment about who is fit to practice law. 
The district court reviews the Board's denial of an application to determine whether or not it is
reasonably supported by substantial evidence. (4) Rule XI(m).

 An agency order is supported by substantial evidence if the evidence as a whole is
such that reasonable minds could have reached the conclusion that the agency reached. Texas
State Bd. of Dental Examiners v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988). Under classical
administrative-law theory, substantial-evidence review asks whether (1) the agency's findings of
basic fact are reasonable conclusions from the evidence adduced in the agency and matters subject
to judicial notice; (2) the agency's findings of ultimate fact are reasonable conclusions from the
basic facts; and (3) the agency's final decision is a reasonable conclusion from the agency's
findings of ultimate fact. See generally John Powers, Judicial Review of the Findings of Fact
Made by Texas Administrative Agencies in Contested Cases, 16 Tex. Tech L. Rev. 475 (1985). 
 


The Administrative Record


 Consideration of the Board's point of error requires scrutiny of the administrative
record on Stevens' application. Our efforts at review are hindered because the record appears
haphazardly in the transcript rather than as a discrete exhibit in the statement of facts. (5)

 We find no formal Board order in the administrative record. Rather, the Board
informed Stevens of the reason for its decision by a letter to his attorney. In the absence of a
more formal document, we will treat the letter as the Board's order. Included in the letter is the
Board's explanation for its decision:


After considering all of the evidence and testimony, the Board voted that
EDWARD H. STEVENS, III['s], application be denied because he lacks the
present good moral character required for admission by the Rules Governing
Admission to the Bar of Texas and by the Statutes. In support of this decision, the
Board found:

 (1) that EDWARD H. STEVENS, III, has demonstrated a marked
disrespect for the law as shown by his failure to file federal income tax
returns for a number of years and by his failure to arrange for
satisfaction of three (3) outstanding civil judgments based upon non-payment of various debts;

 (2) that EDWARD H. STEVENS, III, has demonstrated a long-standing lack of financial responsibility in his dealings with creditors and
the Internal Revenue Service;

 (3) that there is a clear and rational connection between the applicant's
disrespect for the law and his lack of financial responsibility on the one
hand and the likelihood that he will injure a client, obstruct the
administration of justice or fail to carry out his responsibilities if he is
licensed to practice law on the other, and;

 (4) that EDWARD H. STEVENS, III, does not possess the present
good moral character as defined in Rule II(b) of the Rules Governing
Admission to the Bar of Texas and as required by Section 82.018 [sic]
(1) and (2) of the Texas Government Code.


Review of Character Evidence

 Because "good moral character" is such an ambiguous qualification for a
prospective attorney, the search for substantial evidence that Stevens lacks good moral character
is tricky. The Board's letter isolated two areas of misconduct that form the basis for its
conclusion that Stevens lacks good moral character:  (1) his failure to satisfy three outstanding
civil judgments, and (2) his failure to file federal income tax returns for a number of years. From
these basic facts the Board found the following ultimate facts:  (1) Stevens' omissions
demonstrated a lack of financial responsibility; (2) Stevens' financial irresponsibility shows a
disrespect for the law; and (3) these two character traits are reasonably likely to harm Stevens'
future clients, to lead to his obstructing the administration of justice, or to impede Stevens'
discharge of his professional responsibilities. We shall examine each of these areas of misconduct
to see if there is evidence from which the Board could reasonably conclude that Stevens lacks the
necessary character to be admitted to the practice of law in this state. 

 However, before weighing the reasonableness of the Board's ultimate fact findings,
we review the statutes and rules governing admissions to the bar. To deny admission because of
a deficiency in the applicant's character, the Board must find a "clear and rational connection
between a character trait of the applicant and the likelihood that the applicant would injure a client
or obstruct the administration of justice if the applicant were licensed to practice law." Tex.
Gov't Code Ann. § 82.028(c)(1) (West 1988). The supreme court by rule (6) has added that a
character trait likely to result in a violation of the Texas Disciplinary Rules of Professional
Conduct also warrants denial of admission. (7) Rule II(b). See State Bar of Tex. v. Wolfe, 801
S.W.2d 202, 203 (Tex. App.--Houston [1st Dist.] 1990, no writ) (state bar rules have same effect
as statutes). We must uphold the Board's decision if it is supported by substantial evidence that
Stevens' misconduct would probably result in (1) injury to future clients, (2) obstruction of
justice, or (3) a violation of the Disciplinary Rules.


Unsatisfied Judgments


 Under some circumstances, failure to satisfy creditors may evince a character trait
that would disqualify an individual from admission to the practice of law. A law student who filed
bankruptcy to avoid the student loans that put him through law school, though he had the prospect
of future employability that would enable him to satisfy the debt, has been deemed to possess such
a character flaw. Application of Gahan, 279 N.W.2d 826 (Minn. 1979); but see Florida Bd. of
Bar Examiners Re Groot, 365 So.2d 164 (Fla. 1978). Before relying on failure to satisfy creditors
as evidence of a lack of good moral character, the Board should consider whether the applicant's
financial irresponsibility was prompted by greed, dishonesty or fraud, or whether some
compelling hardship reasonably beyond the applicant's control could have excused the default. 
See generally Kristine C. Karnezis, Annotation, Failure to Pay Creditors as Affecting Applicant's
Moral Character for Purposes of Admission to the Bar, 4 A.L.R. 4th 436 (1981). After reviewing
the record that was before the district court, we find nothing from which one might reasonably
conclude that Stevens' lack of financial responsibility relative to these judgments would probably
injure a future client, obstruct the administration of justice, or lead to a violation of the
Disciplinary Rules. 


Pattern of Not Filing Tax Returns


 Stevens' failure to file federal income tax returns presents a closer question
regarding his lack of good character. As the Board noted, this behavior demonstrates financial
irresponsibility and disregard for legal obligations. However, labelling Stevens' behavior is not
the end of the analysis. We must determine whether reasonable minds could infer that, in
possessing these traits, Stevens would probably injure a client, obstruct the administration of
justice, or violate the Disciplinary Rules. 

 On Motion for Rehearing, the Board calls our attention to a recent New York
decision involving a lawyer who had failed to file state and federal income tax returns for a period
of twenty years; that state's intermediate appellate court overruled a recommendation of public
censure and imposed the more severe penalty of disbarment. Matter of Chervin, 586 N.Y.S.2d
946 (N.Y. App. Div. 1992). We note several distinctions between that decision and the case
before us. Chervin had been convicted of two counts of the misdemeanor of failing to file state
income tax returns; Stevens has not been indicted, much less convicted, of any crime and there
is no record evidence of any probable indictment against him. At the time of his disciplinary
hearing, Chervin had not made arrangements for paying his state and federal income tax
obligations; Stevens indicated to the Board that he had fulfilled all his back-taxes obligations
except for a disagreement regarding the amount of penalties due. The New York court found that
Chervin's repeated failure to file tax returns was motivated by "deliberate venality and
dishonesty," in direct violation of that state's professional code of responsibility. Id. at 950. 
There is no evidence in this record of such a motivation underlying Stevens' disregard for his tax
obligations.

 We agree that Stevens' disregard for his tax obligations is deplorable and fails to
set a good example of respect for the legal system. However, we do not find record evidence to
support the conclusion that Stevens' omissions or his motives are likely to injure future clients. 
There is no evidence before the trial court indicating that in twenty years as an attorney Stevens
has ever been the subject of any grievances, complaints or disciplinary hearings in Mississippi. 
Nor is there evidence that could rationally connect Stevens' failure to file tax returns with the
obstruction of justice. See State v. McVicker, 553 S.W.2d 820, 821 (Tex. Civ. App.--Beaumont
1977, writ ref'd n.r.e.) (failure to file income tax returns is not "prejudicial to the administration
of justice"). Therefore, the Board's denial of admission can only be affirmed if there is evidence
that reasonably supports the Board's conclusion that Stevens will probably violate the new
Disciplinary Rules.

 State Bar Rule article X, section 7 and Disciplinary Rule 8.04 form a
comprehensive statement of all conduct that will subject a lawyer to discipline. (8) We have
determined that Disciplinary Rules 8.04(a)(2) and (3) most nearly apply to this situation. A
lawyer violates the Disciplinary Rules by committing "a serious crime or any other criminal act
that reflects adversely on the lawyer's honesty, trustworthiness or fitness in other respects." 
Disciplinary Rule 8.04(a)(2). Likewise, a lawyer violates the rules by engaging in conduct
involving dishonesty, fraud, deceit, or misrepresentation. Disciplinary Rule 8.04(a)(3). Hence,
our inquiry is whether a clear and rational connection exists between Stevens' non-filing and either
of these potential violations of the Disciplinary Rules.

 Not all illegal conduct reflects adversely on fitness to practice law; the Disciplinary
Rules carry forward the former distinction between "serious crimes" and other offenses. See
Disciplinary Rule 8.04, Comment 4. "Serious crime" is defined as "any felony involving moral
turpitude, any misdemeanor involving theft, embezzlement, or fraudulent misappropriation of
money or other property." Disciplinary Rule 8.04(b). Standing alone, Stevens' failure to file
federal income tax returns would not seem to constitute a serious crime. See State v. McVicker,
553 S.W.2d at 821 ("serious crime" held not to include the crime of willful failure to file an
income tax return). We decline the Board's invitation to rely on isolated language in the
Comment to Disciplinary Rule 8.04 to extend the definition of serious crime to include a pattern
of not filing tax returns. When considering the State Bar rules, we look to the entire rule rather
than to one phrase, clause, or sentence. State Bar of Tex. v. Wolfe, 801 S.W.2d at 204. One
provision or part will not be given meaning or construction out of harmony or inconsistent with
the other provisions. Id.

 In some circumstances, a failure to file income tax returns might involve
"dishonesty, fraud, deceit or misrepresentation" that would threaten a violation of Disciplinary
Rule 8.04(a)(3). See Matter of Chervin, 586 N.Y.S.2d at 950 (lawyer convicted of failure to file
tax returns was motivated by deliberate venality and dishonesty, directly violating specific
disciplinary rules). But this record is devoid of any such evidence. To the contrary, letters of
recommendation from the President of the Mississippi Bar Association, from a member of the
Mississippi Board of Bar Commissioners, and from other prominent attorneys in the state testify
to Stevens' integrity and honesty. We share the Board's concerns about Stevens' financial
irresponsibility and disregard for his tax obligations. We sympathize with the difficulty the Board
faces in assessing such an ambiguous quality as "good moral character." On the state of the
record presented to the trial court, however, we hold Stevens met his burden of demonstrating that
the Board did not reasonably conclude his misconduct would probably result in injury to future
clients, the obstruction of justice, or a disciplinary violation.

 The vagueness of the "good moral character" standard elevates the importance of
the Board's reasonably connecting basic facts to ultimate facts and ultimate facts to the Board's
final decision. This is necessary to prevent arbitrary agency action and injustice. In aid of its
future efforts to measure the good moral character of applicants, the Board might invoke its rule-making powers to define under what circumstances failure to satisfy financial obligations or file
income tax returns would reasonably justify drawing any of the conclusions necessary to deny
admission to practice law in this state.


 CONCLUSION



 For the reasons given, we overrule the Board's point of error and affirm the
judgment of the district court.


 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie, and B. A. Smith]

Affirmed

Filed: December 23, 1992

[Publish]
1. The supreme court has been authorized to enact rules for admitting new attorneys to
practice law in this state. The rules may include provisions to ensure the good moral character
of each candidate. Tex. Gov't Code Ann. §§ 82.022(a)(1)(A) and (b) (West 1988). Similarly,
the court is authorized to enact rules governing the admission of attorneys from other
jurisdictions to practice law in this state. "All such attorneys shall be required to furnish
satisfactory proof as to good moral character." Id. § 82.036 (West Supp. 1992).
2. Unless otherwise specified, all citations to rules will refer to the supreme court's Rules
Governing Admission to the State Bar of Texas, enacted under the authority of Tex. Gov't
Code Ann. §§ 82.022 and 82.036 (West 1988 & Supp. 1992).
3. "To the extent that external factors influence individual decisions, an examination of past
behavior will not assist in predicting future actions. Unhappy marriage and excessive
consumption of alcohol probably result in far more bad lawyering than dishonesty or personal
venality." Id. at 729.
4. The rule is somewhat redundant in that substantial evidence has been held to be such that
"a reasonable mind might accept [it] as adequate to support a conclusion." Pierce v.
Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. National Labor
Relations Bd., 305 U.S. 197, 229 (1938)).
5. Proceedings before the Board are not subject to the Administrative Procedure and Texas
Register Act, Tex. Rev. Civ. Stat. Ann. art. 6252-13a (West Supp. 1992). Hence, the party
seeking judicial review of a Board decision need not follow APTRA § 19(d)(3), which requires
the party to offer the agency record into evidence before the district court. This court has
previously observed, and we reiterate, that all concerned would benefit from observance of
APTRA § 19(d)(3). See Malloy, 793 S.W.2d at 755 n.2.
6. Section 82.022(b) of the Government Code authorizes the supreme court to "adopt rules
necessary to administer its functions and to govern the administration of the Board of Law
Examiner's function relating to the licensing of lawyers." Tex. Gov't Code Ann. § 82.022(b)
(West 1988).
7. Rule II(b) refers to a violation of the Code of Professional Responsibility; that Code was
replaced by the Texas Disciplinary Rules of Professional Conduct effective January 1, 1990. 
See Tex. Disciplinary R. Prof. Conduct, reprinted in Tex. Gov't Code Ann., tit. 2, substit. G
app. (Vernon Supp. 1992) (State Bar Rules art. X, § 9). To distinguish them from the Rules
Governing Admission to the Bar, the Texas Disciplinary Rules of Professional Conduct shall
be referred to as the Disciplinary Rules.
8. "This Article and the Texas Code of Professional Responsibility [now Texas Disciplinary
Rules of Professional Conduct] are cumulative of all laws of the State of Texas relating to the
professional conduct of lawyers and to the practice of law." State Bar Rules, art. X, § 7. See
also Disciplinary Rule 8.04, Comment 1: "There are three principal sources of professional
obligations for lawyers in Texas: these rules, the State Bar Act, and the State Bar Rules. 
Article X, section 7 of the State Bar Rules contains a listing of the grounds for discipline
under those Rules."